1  CORI R. SARNO, ESQ., SB No. 230559
      Email: csarno@akk-law.com
2  SEAN D. O'DOWD, ESQ., SB No. 296320
      Email: sodowd@akk-law.com
3  **ANGELO, KILDAY & KILDUFF, LLP**
4  Attorneys at Law
   601 University Avenue, Suite 150
5  Sacramento, CA  95825
6  Telephone: (916) 564-6100
   Telecopier: (916) 564-6263

7
8  Attorneys for Defendant COUNTY OF YOLO, erroneously sued herein as YOLO COUNTY SOCIAL SERVICES DEPARTMENT

9

10                    **UNITED STATES DISTRICT COURT**

11                    **EASTERN DISTRICT OF CALIFORNIA**

12

13                                          )  Case No.: 2:16-cv-02466-WBS-DB
   IVY ANDERSON,                            )
14                          Plaintiff,      )  **DECLARATION OF SEAN D. O'DOWD**
                                            )  **IN SUPPORT OF DEFENDANT'S**
15                 vs.                       )  **MOTION TO DISMISS COMPLAINT**
                                            )  **PURSUANT TO 12(B)(1) AND 12(B)(6)**
16                                          )
   YOLO COUNTY SOCIAL SERVICES              )
17 DEPARTMENT,                              )  **Date: January 9, 2017**
                                            )  **Time: 1:30 P.M.**
18                          Defendants.     )  **Courtroom 5, 14th Floor**
                                            )  **Honorable William B. Shubb**
19  _____ )

20      I, Sean D. O'Dowd, declare:

21      1.      I am an attorney duly licensed to practice law before all the Courts of the State of

22 California, in the United States District Court for the Eastern District of California, and the

23 United States Court of Appeals for the Ninth Circuit.  I am an associate in the law firm of

24 Angelo, Kilday, and Kilduff, LLP, attorneys of record for Defendant COUNTY OF YOLO,

25 erroneously sued herein as YOLO COUNTY SOCIAL SERVICES DEPARTMENT, in this

26 action. If called upon to, I can testify competently and from personal knowledge to the

27 following:

28  ///

2.      A true and correct copy of the Notice of Action dated July 1, 2015 is attached hereto as **Exhibit 1**. This is the same document that is incorporated by reference in paragraph 10 of Plaintiff Ivy Anderson's (hereinafter Plaintiff) First Amended Complaint (hereinafter "FAC"). I obtained this copy from my client, and the content of the Notice is exactly the same as when it was sent to Daytrail Swan (hereinafter "Swan") on or before July 1, 2015. The only difference is that the sizing of the document and font had to be changed in order to fit on standard legal sized paper.

3.      A true and correct copy of the decision issued by the State of California CDSS State Hearings Division on December 15, 2015 is attached hereto as **Exhibit 2**. This is the same document that is incorporated by reference in paragraph 13 of Plaintiff's FAC. I obtained this copy from my client, and have produced it in exactly the same condition and format as it was received from the State Hearings Division.

4.      A true and correct copy of the Request for Rehearing send by Plaintiff on January 8, 2016 is attached hereto as **Exhibit 3**. This is the same document that is incorporated by reference in paragraph 14 of Plaintiff's FAC. I obtained this copy from my client, and have produced it in exactly the same condition and format as it was received from Plaintiff.

5.      A true and correct copy of the correspondence sent to Plaintiff by the Department of Social Services on March 30, 2016 is attached hereto as **Exhibit 4**. This is the same document that is incorporated by reference in paragraph 15 of Plaintiff's FAC. I obtained this copy from my client, and have produced it in exactly the same condition and format as it was sent to Plaintiff on or before March 30, 2016.

6.      A true and correct copy of the In-Home Supportive Services Provider Notification addressed to Plaintiff and listing her as the provider for Swan is attached hereto as **Exhibit 5**. I obtained this copy from my client, and have produced it in exactly the same condition and format as it was sent to Plaintiff on or before March 30, 2016.

7.      A true and correct copy of the SOC 332 form, signed by Plaintiff on behalf of Swan on June 10, 2015, is attached hereto as **Exhibit 6**. I obtained this copy from my client, and have produced it in exactly the same condition and format as it was when it was received from

1    Plaintiff on or about June 10, 2015.

2        8.    A true and correct copy of section 30-701(e)(1)-(2) of the California Department

3    of Social Services Manual of Policies and Procedures, along with the table of contents, is

4    attached hereto as **Exhibit 7**.  I obtained this copy from the internet on October 20, 2016, at the

5    following link: http://www.dss.cahwnet.gov/ord/entres/getinfo/pdf/ssman2.pdf

6        9.    A true and correct copy of Yolo County In-Home Supportive Services Provider

7    Handbook is attached hereto as **Exhibit 8**.  I obtained this copy from my client, and have

8    produced it in exactly the same condition and format as it existed when it was given to Plaintiff

9    and Swan.

10       10.   A true and correct copy of All County Letter 15-25 is attached hereto as **Exhibit**

11   **9**.   I obtained this copy from the internet on October 20, 2016, at the following link:

12   http://www.dss.cahwnet.gov/lettersnotices/entres/getinfo/acl/2015/15-25.pdf

13       11.   A true and correct copy of Yolo County Form YC300-A(1/06) entitled "IN-

14   HOME   SUPPORTIVE   SERVICES   PROGRAM   STATEMENT   OF   RECEIPT   AND

15   UNDERSTANDING" signed by both Anderson and Swan is attached hereto as **Exhibit 10**.  I

16   obtained this copy from my client, and have produced it in exactly the same condition and format

17   as it existed when it was received on or after November 16, 2009.

18       I declare under penalty of perjury under the laws of the State of California and the United

19   States of America that the foregoing is true and correct.

20       Executed this 20th day of October 2016, at Sacramento, California.

21

22                                        */s/ Sean D. O'Dowd*

23                                        Sean D. O'Dowd

24   00113992

25

26

27

28

-3-
DECLARATION OF SEAN D. O'DOWD IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT
TO 12(B)(1) AND 12(B)(6)

**Exhibit 1**

# NOTICE OF ACTION

## COUNTY OF YOLO

STATE OF CALIFORNIA
HEALTH AND HUMAN SERVICES AGENCY
CALIFORNIA DEPARTMENT OF SOCIAL SERVICES

# IN-HOME SUPPORTIVE SERVICES (IHSS)
# CHANGE

| | |
|---|---|
| Notice Date : | 07/01/2015 |
| Case Name : | DAYTRAIL SWAN |
| Case Number : | 0023459 |
| Social Worker Name : | MARISELA CORTEZ |
| Social Worker Number : | WI2M |
| Social Worker Telephone : | 530-406-4415 |
| Social Worker Address : | |

**NOTE:** This notice relates ONLY to your In-Home Supportive Services. It does NOT affect your receipt of SSI/SSP, Social Security or Medi-Cal. **KEEP THIS NOTICE WITH YOUR IMPORTANT PAPERS.**

25 N Cottonwood ST
Woodland, CA 95695

(ADDRESSEE)
DAYTRAIL SWAN
916 CHESTNUT LN
DAVIS, CA 95616-2443

---

As of 07/16/2015 , the services you can get and/or the amount of time you can get for services has changed.
Here's Why:
**Total Hours:Minutes of IHSS you can get each month is now:** 22:30 . **This is a/an increase/decrease of** -227:28 .

You will now get the services shown below for amount of time shown in the column "Final Amount of Service You Can Get." That column shows the hours/minutes you got before, the hours/minutes you will get from now on, and the difference. If you are getting less time for a service, the reason(s) is shown on the next page.
1) If there is a zero in the "Authorized Amount of Service You Can Get" column or the amount is less than the "Total Amount of Service Needed" column, the reason is explained on the next page(s).
2) "Not Needed" means that your social worker found that you do not require assistance with this task. (MPP 30-756.11)
3) "Pending" means the county is waiting for more information to see if you need that service. See the next page(s) for more information.

| SERVICES  NOTE: See the back of the next page for a short description of each service. | TOTAL AMOUNT OF SERVICE NEEDED HOURS:MINUTES | ADJUSTMENT FOR OTHERS WHO SHARE THE HOME (PRORATION) | AMOUNT OF SERVICE YOU NEED HOURS:MINUTES | SERVICES YOU REFUSED OR YOU CAN GET FROM OTHERS | AUTHORIZED AMOUNT OF SERVICE YOU CAN GET HOURS:MINUTES NOW | WAS | +/- |
|---|---|---|---|---|---|---|---|
| **DOMESTIC SERVICES (per MONTH):** | 02:00 | 00:00 | 02:00 | 00:00 | 02:00 | 02:00 | 00:00 |
| **RELATED SERVICES (per WEEK):** | | | | | | | |
| Prepare Meals | 06:25 | 04:49 | 01:36 | 00:00 | 01:36 | 07:00 | -05:24 |
| Meal Clean-up | 03:16 | 02:27 | 00:49 | 00:00 | 00:49 | 02:11 | -01:22 |
| Routine Laundry | 01:00 | 00:00 | 01:00 | 00:00 | 01:00 | 01:00 | 00:00 |
| Shopping for Food | 01:00 | 00:45 | 00:15 | 00:00 | 00:15 | 00:15 | 00:00 |
| Other Shopping/Errands/Reading Services | 00:30 | 00:23 | 00:07 | 00:00 | 00:07 | 00:30 | -00:23 |
| **NON-MEDICAL PERSONAL SERVICES (per WEEK):** | | | | | | | |
| Respiration Assistance (Help with Breathing) | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Bowel, Bladder Care | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Feeding | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Routine Bed Bath | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Dressing | 00:14 | | 00:14 | 00:00 | 00:14 | 00:35 | -00:21 |
| Menstrual Care | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Ambulation (Help with Walking, including Getting In/Out of Vehicles) | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Transferring (Help Moving In/Out of Bed, On/Off Seats, etc.) | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Bathing, Oral Hygiene, Grooming | 00:35 | | 00:35 | 00:00 | 00:35 | 00:35 | 00:00 |
| Rubbing Skin, Repositioning | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| Help with Prosthesis (Artificial Limb, Visual/ Hearing Aid) or Setting up Medications | 00:07 | | 00:07 | 00:00 | 00:07 | 00:07 | 00:00 |
| **ACCOMPANIMENT (per WEEK):** | | | | | | | |
| To/From Medical Appointments | 00:01 | | 00:01 | 00:00 | 00:01 | 00:01 | 00:00 |
| To/From Places You Get Services in Place of IHSS | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| **PROTECTIVE SUPERVISION (per WEEK):** | 00:00 | | 00:00 | 00:00 | 00:00 | 45:02 | -45:02 |
| **PARAMEDICAL SERVICES (per WEEK):** | 00:00 | | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 |
| TOTAL WEEKLY HOURS:MINUTES OF SERVICE YOU CAN GET: | | | | | 04:44 | | |
| MULTIPLY BY 4.33 (average # of weeks per month) TO CONVERT TO MONTHLY HOURS:MINUTES: | | | | x | 4.33 | = | |
| SUBTOTAL MONTHLY HOURS:MINUTES OF SERVICE YOU CAN GET: | | | | | 20:30 | | |
| ADD MONTHLY DOMESTIC HOURS:MINUTES OF SERVICE YOU CAN GET (from above): | | | | | 02:00 | | |
| **TOTAL HOURS:MINUTES OF SERVICE YOU CAN GET PER MONTH:** | | | | | 22:30 | | |

| TIME LIMITED SERVICES (per MONTH): | | | | | | | |
|---|---|---|---|---|---|---|---|
| Heavy Cleaning: | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 | | |
| Yard Hazard Abatement | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 | | |
| Remove Ice, Snow | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 | | |
| Teaching and Demonstration | 00:00 | 00:00 | 00:00 | 00:00 | 00:00 | | |
| **TOTAL HOURS:MINUTES OF TIME LIMITED SERVICES YOU CAN GET PER MONTH:** | | | | | 00:00 | | |

**Questions?:** Please contact your IHSS social worker. See top of page for phone number.
**State Hearing:** If you think this action is wrong, you can ask for a hearing. The back of this page tells how.

**YOUR HEARING RIGHTS**

1. You have the right to ask for a conference with the county to talk about this action. At the conference, you can speak for yourself, or someone else (a lawyer, relative, friend, or other person) can speak for you. If you want a conference, contact the county.

2. Whether or not you ask for a conference, you also have the right to ask for a hearing if you disagree with any county action. **You have only 90 days to ask for a hearing. The 90 days started the day after the county gave or mailed you this notice.**

3. If you ask for a hearing before an action on your In-Home Supportive Services (IHSS) takes place, your services will continue until the hearing. If you make your request in good faith, you will not have to repay any money you receive for services you get pending the hearing, even if the hearing decision says the county's action was right.

4. You can ask for a hearing in person or in writing. You have to say that you want a hearing and tell the reason(s) you want one.

5. You can ask for a hearing on your own or you can ask the county for assistance. Either way, you should tell your worker as soon as possible.

6. At a hearing, you can speak for yourself, or someone else (a lawyer, relative, friend, or other person) can speak for you. You can get free legal help at your local legal aid or welfare rights office. For a legal aid referral, call the toll-free number listed on this page.

7. If you do not want to go to the hearing alone, you can bring a relative, friend, or other person with you.

8. You can review the regulations about hearings at your local IHSS office.

9. Information Practices: The information you give to ask for a hearing is required to process your request according to state law. A case file will be made up for the hearing and you have the right to look at the information in the file. Any information you give may be shared with the county or the United States Department of Health and Human Services.

**TO ASK FOR A HEARING:**

- Fill out this page.
- Make a copy of the front and back of this page for your records. If you ask, your worker will get you a copy of this page.
- Send this page to:

  California Department of Social Services
  State Hearings Division
  P.O. Box 944243, Mail Station 8-16-50
  Sacramento, CA  94244-2430

- Or, call toll free:  1-800-952-5253, or for hearing or speech impaired persons who use TDD, 1-800-952-8349

---

### REQUEST FOR HEARING

I want a hearing because I disagree with the action of the county regarding my social services.  Here's why:

_____
_____
_____
_____
_____
_____
_____

☐ If you need more space, check box and add a page.

☐ I need the state to provide me with an interpreter at no cost to me.  (A relative or friend cannot interpret for you at the hearing.)

My language or dialect is: _____

PERSON WHOSE SOCIAL SERVICES WERE DENIED, CHANGED OR STOPPED

| TELEPHONE NUMBER | BIRTH DATE |
|---|---|
| STREET ADDRESS | |
| CITY | STATE    ZIP CODE |
| SIGNATURE | DATE |
| NAME OF PERSON COMPLETING THIS FORM | TELEPHONE NUMBER |

☐ I want the person named below to represent me at this hearing.  I give my permission for this person to see my records and/or go to the hearing for me.  (This person can be a friend or relative but this person cannot interpret for you.)

| NAME | TELEPHONE NUMBER |
|---|---|
| STREET ADDRESS | |
| CITY | STATE    ZIP CODE |

**NOTICE OF ACTION**
**IN-HOME SUPPORTIVE SERVICES (IHSS)**
**CHANGE (CONTINUED)**

COUNTY OF Yolo
STATE OF CALIFORNIA
HEALTH AND HUMAN SERVICES AGENCY
CALIFORNIA DEPARTMENT OF SOCIAL SERVICES

Notice Date: 07/01/2015
Case Name: _____ DAYTRAIL SWAN
Case Number: 0023459

As of 07/16/2015, you will no longer get In-Home Supportive Services through the
Community First Choice Option (CFCO) Program (W&IC 14132.956)
You will now get IHSS through the
Personal Care Services Program (PCSP) (MPP 30-780)

You will get services from the PCSP Program because your authorized services, due to an assessed change in your condition, no longer meet the requirements for the CFCO program.

As of 07/16/2015, the hours of IHSS you get are decreased. Here's why:
The reassessment of your needs done on 06/10/2015 found that your condition has changed and/or that you now need less assistance in the these areas (MPP 30-756, MPP 30-757, MPP 30-761, MPP 30-763):
Meal Clean-up
Dressing
Preparation of Meals

All or some of your IHSS services will be provided by a person selected by you. Please contact the county IHSS office when you select a provider(s). (MPP 30-767)

Because you share living arrangements with another person(s), your authorized hours for the following Services have been prorated by the amount shown in the Adjustment column on the front page of this NOA:
Meal Clean-up
Other Shopping & Errands
Preparation of Meals
Shopping for Food
This means that these tasks are being performed for other persons in the household so the time it takes to perform these tasks has been divided among each person, and you receive only your share of this time. If your provider is performing a task for you alone, there has been no proration of time. (MPP 30-763)

For the period 07/16/2015 through 07/31/2015, your authorized service hours have been prorated. Your total authorized hours for this period are 11 hours, 37 minutes. Here's why: Your services begin date is after the 1st of the month. Beginning next month you will receive your full authorization of 22 hours, 30 minutes. The attached form shows the monthly number of hours you have been approved to receive for each service.

You cannot get Protective Supervision Service. Here's why:
An assessment of your needs done on 06/10/2015, found that you do not need 24-hour supervision to ensure your safety.(MPP 30-757.17)

You get IHSS as a service of your Medi-Cal. See your Medi-Cal notice for information about your Medi-Cal eligibility and any Medi-Cal share-of-cost you may have to pay.
If you have a share-of-cost, a letter will be sent to you each time one of your providers' timesheets are processed telling you how much you need to pay your provider.

**You must immediately tell the county about any changes that might affect your eligibility or need for IHSS, including changes in income, property, living arrangements, medical conditions or the ability to work. If you have any questions or think more facts should be considered, call your social worker.**

**Rules:** The applicable Manual of Policies and Procedures (MPP) sections are shown above and on the previous page in parentheses. You may review the MPP at your local IHSS office.
**Questions?:** Please contact your IHSS social worker.
**State Hearing:** If you think this action is wrong, you can ask for a hearing. The back of the first page of this notice tells how.

**DOMESTIC SERVICES**: General household chores to maintain the cleanliness of the home. MPP 30-757.11

**RELATED SERVICES:**

- Meal Preparation: Planning menus, preparing foods, cooking and serving meals. MPP 30-757.131
- Meal Clean-up: Cleaning up the cooking area and washing, drying and putting away cookware, dishes and utensils. MPP 30-757.132
- Routine Laundry: Washing, drying, folding and putting away clothes and household linens. MPP 30-757.134
- Shopping for Food: Making a grocery list, traveling to/from the store, shopping, loading, unloading, and storing food purchased. MPP 30-757.135(b)
- Other Shopping/Errands/Reading Services: Includes: 1) Shopping for other necessary supplies; 2) Performing small and necessary errands, e.g., picking up a prescription, and 3) Reading important documents such as, medication instructions, food labels, utility bills, or rental agreements. MPP 30-757.135(c)

**NON-MEDICAL PERSONAL SERVICES:**

- Respiration Assistance: Assisting recipient with nonmedical breathing related services such as self-administration of oxygen and cleaning breathing machines. MPP 30-757.14(b)
- Bowel and/or Bladder Care: Assisting the recipient with using the toilet (including getting on/off), bedpan/bedside commode or urinal; emptying and cleaning ostomy, enema and/or catheter receptacles; applying diapers, disposable undergarments and disposable barrier pads; wiping and cleaning recipient; and washing/drying recipient's hands. MPP 30-757.14(a)
- Feeding: Assisting the recipient to eat meals, including cleaning his/her face and hands before and after meals. MPP 30-757.14(c)
- Routine Bed Bath: Giving a recipient who is confined to bed a routine sponge bath. MPP 30-757.14(d)
- Dressing: Assisting the recipient to put on and take off his/her clothes as necessary throughout the day. MPP 30-757.14(f)
- Menstrual Care: Assistance with the external placement of sanitary napkins and barrier pads. MPP 30-757.14(j)
- Ambulation and Getting In/Out of Vehicles: Assisting the recipient with walking or moving about the home, including to/from the bathroom, and to/from and into/out of the car for transporting to medical appointments and/or alternative resources. MPP 30-757.14(k)
- Transfer (Moving In/Out of Bed and/or On/Off Seats): Assisting recipient from standing, sitting, or prone position to another position and/or from one piece of furniture or equipment to another. MPP 30-757.14(h)
- Bathing, Oral Hygiene and/or Grooming: Assisting the recipient with: bathing or showering; brushing teeth, flossing, and cleaning dentures; shampooing, drying, and combing/brushing hair; shaving; and applying lotion, powder, deodorant. MPP 30-757.14(e)
- Rubbing Skin and Repositioning: Rubbing skin to promote circulation and/or prevent skin breakdown; turning in bed and other types of repositioning; and supervising range of motion exercises. MPP 30-757.14(g)
- Care of/Assistance with Prosthesis and Help Setting Up Medications: Taking off/putting on and maintaining and cleaning prosthetic devices, including vision/hearing aids; reminding the recipient to take prescribed and/or over-the-counter medications, and setting up Medi-sets. MPP 30-757.14(i)

**TRANSPORTATION SERVICES:** Transporting recipient to and from: 1) Appointments with physicians, dentists and other health practitioners; or 2) Sites necessary for fitting health related appliances/devices and special clothing, when transportation for these purposes is not provided under Medi-Cal. This also includes transporting the recipient to sites where alternative resources provide in-home supportive services to recipient in place of IHSS. MPP 30-757.15

**HEAVY CLEANING:** Thorough cleaning of the home to remove hazardous debris or dirt. Authorized one time only and only under certain circumstances. MPP 30-757.12

**YARD HAZARD ABATEMENT:** Light work in the yard to: 1) Remove high grass or weeds, and rubbish when these materials pose a fire hazard (authorized one time only); or 2) Remove ice, snow or other hazardous substances from entrances and essential walkways when these materials make access to the home hazardous. MPP 30-757.16

**PROTECTIVE SUPERVISION:** Observing the behavior of a non-self-directing, confused, mentally impaired or mentally ill recipient and assisting as appropriate to guard recipient against injury, hazard or accident. Certain limitations apply. MPP 30-757.17

**TEACHING AND DEMONSTRATION SERVICES:** Teaching and demonstrating those services provided by IHSS providers so the recipient can perform services which are currently performed by IHSS providers by himself/herself. Certain limitations apply. MPP 30-757.18

**PARAMEDICAL SERVICES:** Services meeting the following conditions: 1) Activities which recipients would normally perform themselves if they did not have functional limitations; 2) Activities which, due to the recipient's physical or mental condition, are necessary to maintain the recipient's health; and 3) Activities which include the administration of medications, puncturing the skin, or inserting a medical device into a body orifice, activities requiring sterile procedures, or requiring a judgment based on training given by a licensed health care professional. Special limitations apply. MPP 30-757.19

**FOR A MORE DETAILED DESCRIPTION OF SERVICES, YOU MAY VIEW THE MANUAL OF POLICY AND PROCEDURES (MPP) SECTIONS REFERENCED ABOVE AT YOUR LOCAL WELFARE OFFICE.**

**Exhibit 2**

# CALIFORNIA DEPARTMENT OF SOCIAL SERVICES
## DEPARTMENT OF HEALTH CARE SERVICES

_Hearing No._ **2015237304**

_In the Matter of Claimant(s):_

Daytrail Swan
916 Chestnut Ln.
Davis, CA 95616

# DECISION

Pursuant to the authority of the Director,
I adopt the attached final decision.

Adopt Date:    December 14, 2015

Mark Hammond
Administrative Law Judge

| | State Hearing Record | | |
|---|---|---|---|
| _Hearing Date:_ | November 24, 2015 | _Release Date:_ | December 15, 2015 |
| _Aid Pending:_ | No | _Issue Codes:_ | [560-3] [568-3] [626-2] |
| _Agency:_ | Yolo County | _Agency Representative:_ | Youssef Reggad |
| _Agency:_ | | _Agency Representative:_ | |
| _Authorized Rep. Organization:_ | | _Authorized Rep:_ | Ivy Anderson |
| _SSN:_ | | _SSN:_ | |
| _AKA:_ | | _AKA:_ | |
| _Case Name:_ | Daytrail Swan | _Language:_ | |
| _LA District/Case:_ | | _Companion Case:_ | |

### Appeal Rights

_You may ask for a rehearing of this decision by mailing a written request to the Rehearing Unit, 744 P Street, MS 9-17-37, Sacramento, CA 95814 within 30 days after you receive this decision. This time limit may be extended up to 180 days only upon a showing of good cause. In your rehearing request, state the date you received this decision and why a rehearing should be granted. If you want to present additional evidence, describe the additional evidence and explain why it was not introduced before and how it would change the decision. You may contact Legal Services for assistance._

_You may ask for judicial review of this decision by filing a petition in Superior Court under Code of Civil Procedure §1094.5 within one year after you receive this decision. You may file this petition without asking for a rehearing. No filing fees are required. You may be entitled to reasonable attorney's fees and costs if the Court renders a final decision in your favor. You may contact Legal Services for assistance._

_This decision is protected by the confidentiality provisions of Welfare and Institutions Code §10850._

*State of California*
*CDSS State Hearings Division*

Hearing No. 2015237304-283
*Page 1*

## SUMMARY

The county shall rescind its action to set the claimant's In-Home Supportive Services (IHSS) at 22:30 hours/minutes per month, and shall authorize IHSS for the claimant at 44:04 hours/minutes per month effective July 16, 2015.

In line with the applicable regulations and authorities governing the IHSS Program, the county's discontinuance of the claimant's IHSS protective supervision is sustained. [560-3] [568-3]   [626-2]

## FACTS

The claimant is a 37 year-old man with a diagnosis of developmental delay.  He lives with his mother, his 14 year-old sister, and his mother's boyfriend.

The claimant was receiving 249.58 hours/minutes of IHSS a month, including protective supervision.  On June 10, 2015, a county social worker conducted a reassessment of the claimant's IHSS needs.  Based on that assessment, the county sent the claimant a Notice of Action dated July 1, 2015 stating his IHSS would be changed to 22:30 hours/minutes a month effective July 16, 2015 as follows:

| Service: | Ranking | Weekly | Monthly | Total |
|---|---|---|---|---|
| Domestic Services: | | | 2:00 | |
| Meal preparation: | | 1:36 | | |
| Meal clean-up: | | 0:49 | | |
| Laundry: | | 1:00 | | |
| Food shopping: | | 0:15 | | |
| Other shopping: | | 0:07 | | |
| Dressing: | | 0:14 | | |
| Bathing, Oral Hygiene and Grooming: | | 0:35 | | |
| Care With Prosthesis: | | 0:07 | | |
| Medical Transportation: | | 0:01 | | |
| Total (weekly x 4.33): | | 20:30 | 2:00 | 22:30 |

The claimant, through his mother who is his Authorized Representative, requested a state hearing. The state hearing was held on November 24, 2015.  The claimant was not present at the hearing. At the state hearing, the Authorized Representative contested the county's determinations of need in the following areas.

*Meal preparation*

The county previously authorized the claimant to receive the full time guideline maximum 7:00 hours a week for meal preparation based on information that meals were prepared separately for

the claimant due to him fixating on foods and not eating what other family members ate. At the June 10, 2015 assessment, the Authorized Representative informed the social worker the claimant is able to grab his own cereal and use the microwave but he needs instruction to do so. The Authorized Representative informed the social worker the claimant is able to grab his own snacks. The Authorized Representative informed the social worker meals are shared by all four persons in the home.

The social worker determined a need for 10 minutes for breakfast, 15 minutes for lunch, and 30 minutes for dinner meals, and then prorated this time between the four people in the home and authorized the claimant to receive a prorated share of 1:36 hours/minutes a week for meal preparation.

The Authorized Representative testified her boyfriend does not share meals with the family. The Authorized Representative testified she and her boyfriend are no longer together as a couple and now are only roommates. The Authorized Representative testified her daughter has breakfast and lunch at school five days a week and makes her own lunch and breakfast on the weekends. The Authorized Representative testified she usually fixes breakfast and lunch for the claimant only. The Authorized Representative testified she fixes dinners for herself, her daughter and the claimant. The Authorized Representative testified she gets snacks for the claimant when he asks.

The Authorized Representative's testimony differs from what she informed the social worker at the assessment. Notwithstanding that difference, the Administrative Law Judge will give the claimant the benefits of the Authorized Representative's testimony, and on that testimony the county shall authorize the claimant to receive 4:40 hours/minutes a week for meal preparation, based on an 10 minutes a day for breakfast un-prorated, 15 minutes a day for lunch un-prorated, 5 minutes a day for snacks un-prorated, and 30 minutes a day for dinner prorated between the claimant, the Authorized Representative, and the claimant's sister.

<u>Meal cleanup</u>

At the June 10, 2015 assessment, the Authorized Representative informed the social worker the claimant is able to place his dishes in the sink and attempts to wash them but does not do it correctly. The Authorized Representative informed the social worker the claimant either uses too much soap or no soap at all. The Authorized Representative reported the claimant does not use dishes for snacks. The Authorized Representative reported she does dishes for the entire family.

The social worker determined a need for 5 minutes a day for breakfast clean up, 8 minutes a day for lunch clean up, and 15 minutes a day for dinner clean up, then prorated this between the four people in the home and authorized the claimant to receive a prorated 46 minutes a week for meal clean up.

The Authorized Representative testified she does breakfast and lunch clean up for the claimant only, and the boyfriend does his own meal clean up.

Giving the claimant the benefit of the Authorized Representative's testimony, which again is different than what she told the social worker at the June 10, 2015 assessment, the county shall authorize the claimant to receive 2:20 hours/minutes a week for meal clean up, based on an 5 minutes a day for breakfast clean up un-prorated, 10 minutes a day for lunch clean up un-prorated, and 15 minutes a day for dinner clean up, prorated between the claimant, the Authorized Representative, and the claimant's sister.

*State of California*
*CDSS State Hearings Division*

He.  .g No. 2015237304-283
*Page 3*

## Errands

At the June 10, 2015 assessment, the Authorized Representative informed the social worker the claimant is not on medications, indicting no errands for medication pick-up. The Authorized Representative also informed the social worker that errands are done together for all four people in the home. The social worker determined a need for the maximum guideline time of 30 minutes a week for errands, then prorated this time between the four people in the home, and authorized the claimant to receive a prorated 7 minutes a week for errands.

The Authorized Representative testified she told the social worker the claimant is not on medications, but sometimes she must go get eye ointment for the claimant. The Authorized Representative indicated the boyfriend does his own errands.

On this evidence, the county shall authorize the claimant to receive 10 minutes a week for errands, based on 30 minutes a week for errands, prorated between the claimant, the Authorized Representative, and the claimant's sister.

## Dressing

The county previously authorized the claimant to receive 35 minutes a week for dressing assistance, based on a need for prompting and for laying out the claimant's clothing. At the June 10, 2015 assessment, the Authorized Representative informed the social worker the claimant needs daily reminders for dressing, otherwise he will wear the same clothes. The Authorized Representative informed the social worker the claimant is able to get his clothing items and shoes on his own and that he chooses his own clothing from the closet. On this information, the social worker determined a need for 2 minutes a day for dressing prompts, for a total of 14 minutes a week.

The Authorized Representative testified she continues to select and lay out the claimant's clothing, otherwise he will wear dirty or inappropriate clothing. On this testimony, it is found the claimant continues to have a need for the previously authorized 35 minutes a week for dressing prompts and laying out clothing.

## Protective supervision

The county has authorized protective supervision for the claimant since 2012 and has taken action to stop that IHSS service.

The social worker testified and stated in her written report of the June 10, 2015 assessment the following:

> The social worker asked the claimant a series of questions to assess his memory, judgment, and orientation for which he provided complete answers. The claimant knew his address, phone number, age, and what he ate that morning. He was able to tell the social worker what activities he likes doing such as working out using weight machines and playing video games and watching television. The claimant mentioned he likes going to his friend Reggie's home and they like going out to get something to eat or to the movies. The claimant informed the social worker he likes watching a church program every Sunday and discussing it with one of his relatives when they visit. The claimant knew the current season along with the year, and the nearest grocery store to his home. The social worker asked if the claimant gets lost and the claimant stated he does not get lost and knows the area. The claimant stated he usually is with somebody when he is going out, which

includes his sister, mom, or his friend Reggie. The claimant stated that being with someone all times is something he chooses because he is used to it and because he knows what goes on in the town of Davis.

According to the social worker, the Authorized Representative mentioned that she knows people will "use" the claimant and he will land in jail if he is on his own.

The social worker asked the claimant if he knows what emergencies are such as a fire, and the claimant stated earthquakes and burglaries are examples of emergencies. In the case of a fire, the claimant mentioned he would tell his mother (the Authorized Representative) first and then call 911. The social worker asked what the claimant would do if he needed to get to a doctor and the claimant stated he would call 911 and that he usually carries a phone. The claimant stated if someone that he did not know came to his door he would tell his mother that someone was at the door. The claimant stated if he were left alone in the home he would relax, watch television, or exercise, and if he was hungry he would get some cereal.

The social worker asked the Authorized Representative if the claimant does anything that causes her to be concerned, and the Authorized Representative stated the claimant does not do anything to put himself in danger. The Authorized Representative stated the claimant knows situations that are dangerous and provided examples such as the fact that he knows how to dial 911 if someone collapsed or if he saw burglars attempting to break into the home. The Authorized Representative informed the social worker the claimant would probably call her if something like that happened. The social worker asked the Authorized Representative what would happen if the claimant was left alone and the Authorized Representative stated the claimant knows not to do anything he is not supposed to do. The Authorized Representative informed the social worker she once left the claimant at home for about 10 minutes in order to go pick up his sister and the claimant knew not to do anything. The Authorized Representative stated the claimant has never accidentally injured himself and is able to decide what to eat and how to spend his time. The Authorized Representative stated the claimant generally follows instructions. For example, he knows not to turn on the stove and does not use the stove or try to turn it on.

The Authorized Representative informed the social worker she must remind the claimant not to turn off his phone. The Authorized Representative informed the social worker that when the claimant goes to the park with his sister she likes to check up on him every half-hour by calling him. The Authorized Representative stated the claimant knows everything by heart, for example not to turn on the stove. The Authorized Representative informed of the social worker the claimant does not get knives or items like household chemicals, and he is not a danger to himself

The social worker informed the Authorized Representative that it did not appear the claimant needs 24-hour protective supervision to keep him safe, and the claimant reported the claimant does not pay attention when riding his bike.

The social worker asked the claimant if he knows what color the light needs to be in order for him to cross the street, and the claimant stated green and that he follows that when crossing the street. The social worker asked if the claimant walks to his friend Reggie's house, and the Authorized Representative stated she drops the claimant off because Reggie lives nearby. The Authorized Representative informed of the social worker that Reggie is wheelchair-bound and she trusts him to spend time with the claimant. The Authorized Representative stated the claimant and Reggie go to Tower Records which is

nearby, and the claimant walks and Reggie uses his wheelchair. The Authorized Representative reported Reggie stated the claimant does not do anything and is not a problem to anyone.

The county presented two Assessment of Need for Protective Supervision for In-Home Supportive Services Program" (SOC 821) forms that it had on file for the claimant. Both forms were completed by Dr. BT, one dated January 17, 2012, and the other January 20, 2012.

On the January 17, 2012 SOC 821, Dr. BT stated the claimant's diagnosis of developmental delay and that he had treated the claimant for two months. Dr. BT stated the claimant has moderate memory deficit, moderate disorientation, and mildly impaired judgment. Dr. BT stated the claimant retain the physical capacity to place himself in a situation that could result in injury, hazard, or accident. Dr. BT stated he was unaware of any injuries or accidents the claimant has suffered due to deficits in memory, orientation, and judgment. Two days later, on the January 20, 2012 SOC 821, Dr. BT stated the claimant has severe memory deficit, severe disorientation, and severely impaired judgment.

The social worker testified the county requested a new SOC 821 from the claimant's doctor but never received it back. The social worker testified that in preparation for the hearing the Public Health Nurse received information from the doctor's office stating the claimant had not been seen in the office in over two years and they therefore could not complete the SOC 821.

The social worker determined that while the claimant is developmentally delayed, he is self-directing and aware of his surroundings and knows what behaviors are right and wrong. The social worker stated this determination was based on her assessment and on All County Letter 15-25. The social worker noted All County Letter 15-25 clarified that non-self-direction, which is required to receive protective supervision, is the inability to assess danger and risk of harm. The social worker stated per her assessment, the claimant is able to assess danger and risk of harm, and his behavior is not putting him at risk of self-harm.

At the hearing, the county noted that All County Letter 15-25 came out after the prior assessments authorizing protective supervision. The county noted that based on the social worker's assessment, and using the information in All County Letter 15-25, it correctly determined the claimant no longer is eligible for protective supervision.

The Authorized Representative testified all of the social worker's testimony and statements in the assessment report are lies. The Authorized Representative testified the claimant has been in special education his whole life. The Authorized Representative presented an August 12, 2015 letter she received from the Social Security Administration in response to her request for information in the claimant's record. The letter states the claimant's diagnosis is significant impairment of intelligence and adaptive capacity, with lifelong cognitive and behavioral deficits.

The Authorized Representative presented a November 20, 2015 IHSS Program Health Care Certification Form (SOC 873) from the claimant's Family Nurse Practitioner. The FNP stated the claimant has developmental delay, he cannot cook or clean, and he needs supervision for 12 hours a day.

The Authorized Representative testified the claimant has left the water running in the sink and it has run onto the floor. The Authorized Representative testified she must be there 24 hours a day to tell the claimant what to do. The Authorized Representative testified she must turn on the lights for the claimant and put toothpaste on his brush. The Authorized Representative testified the claimant's mind is not there and he is like a three-year-old.

The boyfriend testified the claimant is not the harm to himself and he will not hurt anyone, but he would do things if someone asked. For example, if someone gave the claimant a gun and said take it over there and give it to someone else, the claimant would do it. The boyfriend testified in the claimant's mind dazes off. The boyfriend testified the claimant will not look both ways and will walk in front of a car. The boyfriend testified the claimant's judgment is off, and if there was a fire next door the claimant would just look at it. The boyfriend testified they have a camera in the house so that the claimant will not leave by himself. The boyfriend testified the claimant will stay up all night. The boyfriend testified the claimant needs directions to do things, and he will open the door to strangers. The boyfriend testified the claimant never goes anywhere by himself.

Both the Authorized Representative and the boyfriend identified the primary risk for the claimant is that he would do something wrong or illegal if someone told him to do it, and he could end up in jail. Both reiterated that the claimant would not hurt himself or anyone else.

The Authorized Representative testified the claimant's doctor has instructed her to let the claimant walk for his health and she is planning on letting him do that as long as her daughter is with the claimant. The Authorized Representative testified the claimant visits and goes places with his friend Reggie, who is in a wheelchair.

The boyfriend testified he had never seen the claimant walk off alone. The boyfriend testified they let the claimant ride his bike to the corner store, but either the boyfriend follows on a moped, or the claimant's sister is with him.

Another county social worker testified she knows the claimant and was his social worker for three years. The social worker testified that on June 2, 2015 she was driving into Davis and was stopped at an intersection stoplight. The social worker testified she observed the claimant by himself at the intersection and on his bike waiting for the stop light to change.

The Authorized Representative testified the intersection identified by the social worker is close to her home and by a park the claimant goes to with his sister. The Authorized Representative testified that maybe the claimant and his sister were playing at the park and the claimant took off on a bike trail near the park.

The boyfriend questioned the social worker, who responded she did not know the boyfriend and did not know if the boyfriend was following after the claimant. No further information was provided as to whether or not the boyfriend was following the claimant.

### Findings and determinations on protective supervision

The evidence showed the 37 year-old claimant suffers from developmental delay. The Administrative Law Judge has no doubt that due to this mental impairment the claimant requires significant attention and monitoring over what a non-mentally impaired 37 year-old would require. As shown in the evidence, he requires prompts and reminders for tasks such as dressing and for bathing, oral hygiene, and grooming, which also was authorized by the county. Under the IHSS regulations, however, more than mental impairment and a need for significant attention and monitoring are needed.

As stated in the regulations, IHSS protective supervision is available for observing the behavior of "non-self-directing, confused, mentally impaired, or mentally ill persons only." As further stated in *Calderon v. Anderson*, protective supervision is limited to beneficiaries who are "for any reason non-self-directing, in that they are unaware of their physical or mental problems and unable to watch out for themselves." (*Calderon v. Anderson, supra,* 45 Cal.App.4th at pp. 614-614, citing

*State of California*
*CDSS State Hearings Division*

Hea..ng No. 2015237304-283
*Page 7*

*Marshall v. McMahon, supra,* 17 Cal. App. 4th at pp. 1852-1853.)  Accordingly, a "proper interpretation" of IHSS protective supervision is that protective supervision is available for those IHSS beneficiaries "who are non-self-directing, in that they are unaware of their physical or mental condition and, therefore, cannot protect themselves from injury, and who would most likely engage in potentially dangerous activities." (*Calderon v. Anderson, supra,* 45 Cal.App.4th at p. 616.)

Thus, as clarified in All County Letter No. 15-25, March 19, 2015:

> In addition to all other relevant eligibility criteria, a person must be both mentally impaired or mentally ill *and* nonself-directing to be eligible for Protective Supervision.  It is not sufficient for someone to just be mentally impaired/mentally ill, there must also be evidence that he/she is nonself-directing.

> For the purpose of Protective Supervision eligibility, nonself-direction is an inability, due to a mental impairment/mental illness, for individuals to assess danger and the risk of harm, and therefore, the individuals would most likely engage in potentially dangerous activities that may cause self-harm.

Protective supervision therefore is warranted only where 24 hour-a-day supervision is necessary to safeguard a mentally ill and non-self-directing recipient who might otherwise unwittingly suffer injury, accident or hazard, or engage in dangerous conduct.  As suggested in the case law cited above, examples would include a mentally impaired individual who is inherently incapable of understanding dangers, such as playing with matches, immersing electrical appliances in water, or wandering away from home.

The difficulty in this case in terms of continuing protective supervision for the claimant is two-fold.

Firstly, while the evidence shows the claimant suffers from mental impairment, the evidence does not show the claimant to be non-self-directing for purposes of receiving protective supervision.

At the assessment, the claimant was able to answer the social worker's questions, he knew his address, phone number, age, and what he ate that morning, he was able to tell the social worker what activities he likes doing such as working out using weight machines and playing video games and watching television, he mentioned he likes going to his friend Reggie's home and they like going out to get something to eat or to the movies, and he knew the current season and year, and the nearest grocery store to his home. The claimant further stated he knows he is supposed to cross the street on the green lights, and he waits for that light before crossing.

The social worker asked if the claimant gets lost and the claimant stated he does not get lost and knows area, that he usually is with somebody when he's going out, which includes his sister, mom, or his friend Reggie, and that he prefers being with someone at all times because he is used to that and because he knows what goes on in the town of Davis.

The claimant knew earthquakes and burglaries are examples of emergencies, and he stated that in the case of fire he would tell his mother (the Authorized Representative) first and then call 911, if he needed a doctor he would call 911 on his phone, if someone that he did not know came to his door he would tell his mother that someone was at the door, and if he were left alone in the home he would relax, watch television, or exercise, and if he was hungry he would get some cereal.

The Authorized Representative reported at the assessment that the claimant does not do anything to put himself in danger, and he knows situations that are dangerous and would call 911 in the event of such a situation, and would call the Authorized Representative.

The Authorized Representative informed the social worker the claimant knows not to do anything is not supposed to do, he has never accidentally injured himself, he is able to decide what to eat and how to spend his time, and he generally follows instructions. The Authorized Representative further stated the claimant knows everything by heart, for example not to turn on the stove, or get knives or items like household chemicals.

This evidence demonstrates the claimant has an awareness that is inconsistent with the protective supervision requirement that the individual be non-self-directing to the point of being unable assess his condition and potential danger and risk of harm, and therefore likely to engage in potentially dangerous activities that may cause self-harm.

The Authorized Representative testified everything reported by the social worker was a lie. However, the social worker's testimony was both credible and given under oath, and was supported by her assessment report. On the weight of this evidence, the claimant possess a degree of self-direction that is inconsistent with the protective supervision requirement that the individual be mentally impaired to the point of being unable to assess danger and the risk of harm and therefore be likely to engage in potentially dangerous activities that may cause self-harm. Accordingly, on this evidence, it is found and determined that the claimant does not meet the protective supervision requirement of non-self-direction.

Secondly, both the Authorized Representative and the boyfriend identified the primary risk for the claimant is that he would do something wrong or illegal if someone told him to do it, and he could end up in jail. It is noted, however, that the IHSS program is intended to offer assistance in the home, and it therefore is questionable whether services could be provided out in public to prevent someone from taking advantage of the claimant. More to the point, as started in All County Letter 15-25, protective Supervision requires a 24 hour a day need, and if the behavior in question is episodic and predictable no 24 hour need exists. The claimant's need for supervision to prevent him from doing something wrong or illegal should someone tell him to is both episodic and predictable to those specific situations when the claimant may be out in public and exposed to strangers, as opposed to a 24 hour-a-day need.

In sum, on this record the weight of the evidence shows the claimant possesses a degree of self-direction and understanding that is inconsistent with the protective supervision requirement of being non-self-directing and mentally impaired to the point of being unable to assess one's condition and associated dangers and risks of harm and therefore likely to engage in potentially dangerous activities that may cause self-harm. Accordingly, on the evidence presented the claimant does not meet the protective supervision requirement of being non-self-directing. The county's discontinuance of protective supervision therefore is sustained.

## LAW

All the regulations cited refer to the California Department of Social Services' Manual of Policies and Procedures (MPP), unless otherwise noted.

The In-Home Supportive Services (IHSS) Program provides assistance to those eligible aged, blind and disabled individuals who are unable to remain safely in their own homes without this assistance. IHSS is an alternative to out-of-home care. (§30-700.1.)

The term In-Home Supportive Services is often used to refer generally to four distinct state/county programs which provided in-home services to disabled populations. These programs are the following:

- PCSP (Personal Care Services Program) is a program funded through Medi-Cal and provides services to individuals who otherwise qualify for Medi-Cal and have a chronic disabling condition. Eligibility is fully based on Medi-Cal eligibility. PCSP is unavailable to individuals whose provider is their spouse or to minors whose parent is the provider. It is also unavailable if the provider is receiving advance payment or the recipient is receiving a restaurant meal allowance. See, generally, Welfare and Institutions Code 14132.95

- IHSS Plus Option (IPO) is a program funded through Medi-Cal, which provides services for federally eligible Medi-Cal recipients who do not qualify for the PCSP Program. Such recipients often include individuals where the spouse is the provider or minors when the parent is the provider. Eligibility is fully based on Medi-Cal eligibility. See, generally, Welfare and Institutions Code 14132.97.

- Community First Choice Option (CFCO) is a program that provides services for federally eligible Medi-Cal recipients who meet IPO requirements and in addition have a need for 195 or more hours of service per month, or meet certain other levels of severity of need. See, generally, All County Letter 14-60, August 29, 2014.

- IHSS Residual (IHSS-R) is a program limited to disabled individuals who do not qualify for federal Medi-Cal program participation, primarily legal aliens. Eligibility is based on linkage to the SSI/SSP program.  See, generally, Welfare and Institutions Code 12300 et. seq.

Social services staff shall determine the need for IHSS services based on the recipient's physical/mental condition or living/social situation; the recipient's statement of need; the availability of medical information; and other information social services staff considers necessary and appropriate. (§30-761.)

In making this assessment, the services staff shall determine the total amount of hours per week needed for the various services set forth in the program content. (§30-763.2.)  No need exists for services which the applicant/recipient is able to perform safely, without an unreasonable amount of physical or emotional stress. (§30-761.25.)

For services in this section where time guidelines are specified, the services shall be subject to the specified time guideline unless the recipient's needs require an exception to the guideline. When assessing time for services (both within and outside the time guidelines), the time authorized shall be based on the recipient's individual level of need necessary to ensure his/her health, safety, and independence based on the scope of tasks identified for service. In accordance with Welfare and Institutions Code Section 12301.2, the dual purpose of the guidelines is to provide counties with a tool for both consistently and accurately assessing service needs and authorizing time.

An exception to the time guideline may result in receiving more or less time based on the recipient's need for each supportive service and the amount of time needed to complete the task. Exceptions to the hourly task guidelines identified in this section shall be made when necessary to enable the recipient to establish and maintain an independent living arrangement and/or remain safely in his/her home or abode of his/her own choosing and shall be considered a normal part of the authorization process. When an exception to an hourly task guideline is made in a recipient's case, the reason for the exception shall be documented in the case file.

(30-757.1(a).)

*State of California*          He. ..ng No. 2015237304-283
*CDSS State Hearings Division*          *Page 10*

A county shall assess a recipient's need for supportive services any time that the recipient notifies the county of a need to adjust the supportive services hours authorized, or when there are other indications or expectations of a change in circumstances affecting the recipient's need for supportive services. (§30-761.219; Welfare and Institutions Code, § 12301.1, subd. (d).)

Related services (meal preparation and cleanup, menu planning, laundry, and shopping and errands) shall be prorated to all the housemates involved when the need is being met in common with other housemates. When the service is not being provided by a housemate, and is being provided separately to the recipient, the assessment shall be based on the recipient's individual need. (§30-763.32.)

*Meal preparation*

For meal preparation, the time guidelines range from 3.02 to 7 hours a week, depending on the recipient's level of functioning, the types of foods the recipient usually eats, the amount of time needed to prepare the food, and the frequency the recipient eats. Exceptions to the time guidelines include if the recipient must have meals pureed or cut into bite-sized pieces or has special dietary requirements that require longer preparation times or preparation of more frequent meals. Exceptions also include if the recipient eats meals that require less preparation time. (§30-757.131.)

*Meal cleanup*

Meal clean-up includes loading and unloading dishwasher; washing, rinsing, and drying dishes, pots, pans, utensils, and culinary appliances, and putting them away; storing/putting away leftover foods/liquids; wiping up tables, counters, stoves/ovens, and sinks; and washing/drying hands. Meal clean up does not include general cleaning of the refrigerator, stove/oven, or counters and sinks. These services are assessed under "domestic services" in Section 30-757.11.

For meal clean-up, the time guidelines range from 1.17 to 3.50 hours per week, depending on the recipient's level of functioning and factors such as the extent to which the recipient can assist or perform tasks safely, the recipients control of utensils and whether he or she spills food, and the types of meals requiring the cleanup. Exceptions to the time guideline range may include, but are not limited to if the recipient must eat frequent meals which require additional time for cleanup and if the recipient eats light meals that require less time for cleanup.

(§30-757.132.)

*Other shopping errands*

Other shopping and errands includes the tasks of making a shopping list, travel to and from the store, shopping, loading, unloading, and storing supplies purchased, and performing reasonable errands. The time guideline for this service shall not exceed 0.5 hour total per week per household unless the recipient's need requires an exception.

(§30-757.135.)

*Dressing*

Dressing includes washing/drying of hands; putting on/taking off, fastening/unfastening, buttoning/unbuttoning, zipping/unzipping, and tying/untying of garments, undergarments, corsets, elastic stockings and braces; changing soiled clothing; and bringing tools to the recipient to assist

with independent dressing.  The time guidelines range from .56 to 3.50 hours a week, depending on, among other factors, the extent to which the recipient can assist or perform tasks safely and the type of clothing/garments the recipient wears.  (§30-757.14(f).)

*Protective supervision*

Protective Supervision consists of observing recipient behavior and intervening as appropriate in order to safeguard the recipient against injury, hazard, or accident.  Protective Supervision is available for observing the behavior of nonself-directing, confused, mentally impaired, or mentally ill persons only.

(a)     Protective Supervision may be provided through the following, or combination of the following arrangements.

    (1)     In-Home Supportive Services program;

    (2)     Alternative resources such as adult or child day care centers, community resource centers, Senior Centers; respite centers;

    (3)     Voluntary resources;

(§§30-757.17 & 171.)

Protective Supervision shall not be authorized:

(a)     For friendly visiting or other social activities;

(b)     When the need is caused by a medical condition and the form of the supervision required is medical.

(c)     In anticipation of a medical emergency;

(d)     To prevent or control anti-social or aggressive recipient behavior.

(e)     To guard against deliberate self-destructive behavior, such as suicide, or when an individual knowingly intends to harm himself/herself.

(§30-757.172.)

The IHSS program is not intended to prevent or control dangerous behaviors, and IHSS providers are not trained to intervene when recipients are displaying such behaviors.  (All County Letter No. 15-25, Mach 19, 2015.)

Protective Supervision is only available under the following conditions as determined by social service staff:

(a)     At the time of the initial assessment or reassessment, a need exists for twenty four-hours-a-day of supervision in order for the recipient to remain at home safely.

    (1)     For a person identified by county staff to potentially need Protective Supervision, the county social services staff shall request that the form SOC 821, "Assessment of Need for Protective Supervision for In-Home Supportive Services Program," be

completed by a physician or other appropriate medical practitioner to certify the need for Protective Supervision and returned to the county.

    (A)    For purposes of this regulation, appropriate medical practitioner shall be limited to those with a medical specialty or scope of practice in the areas of memory, orientation, and/or judgment.

  (2)    The form SOC 821 shall be used in conjunction with other pertinent information, such as an interview or report by the social service staff or a Public Health Nurse, to assess the person's need for Protective Supervision.

  (3)    The completed form SOC 821 shall not be determinative, but considered as one indicator of the need for Protective Supervision.

  (4)    In the event that the form SOC 821 is not returned to the county, or is returned incomplete, the county social services staff shall make its determination of need based upon other available information.

**HANDBOOK BEGINS HERE**

  (5)    Other available information can include, but is not limited to, the following:

    (A)    A Public Health Nurse interview;

    (B)    A licensed health care practitioner reports;

    (C)    Police reports;

    (D)    Collaboration with Adult Protective Services, Linkages, and/or other social service agencies;

    (E)    The social service staff's own observations.

**HANDBOOK ENDS HERE.**

(b)    At the time of reassessment of a person receiving authorized Protective Supervision, the county social service staff shall determine the need to renew the form SOC 821.

  (1)    A newly completed form SOC 821 shall be requested if determined necessary, and the basis for the determination shall be documented in the recipient's case file by the county social service staff.

(c)    Recipients may request protective supervision. Recipients may obtain documentation (such as the SOC 821) from their physicians or other appropriate health care practitioners for submission to the county social service staff to substantiate the need for protective supervision.

(§30-757.173.)

The county shall use the form SOC 821 "Assessment of Need for Protective Supervision for In-Home Supportive Services Program," in conjunction with other pertinent information to assess the person's need for protective supervision.  The certification submitted by the person shall be

considered as one indicator of the need for protective supervision, but shall not be determinative. (Welfare and Institutions Code, §12301.21(a) & (b).)

---

In addition to all other relevant eligibility criteria, a person must be both mentally impaired or mentally ill *and* nonself-directing to be eligible for Protective Supervision.  It is not sufficient for someone to just be mentally impaired/mentally ill, there must also be evidence that he/she is nonself-directing.  This policy is based on the court rulings in the *Marshall v. McMahon*, (1993) 17 Cal. App. 4th 1841, and *Calderon v. Anderson*, (1996) 45 Cal. App. 4th 607, cases, and will also be reflected in forthcoming amendments to the Protective Supervision regulations found at MPP § 30-757.17.

For the purpose of Protective Supervision eligibility, nonself-direction is an inability, due to a mental impairment/mental illness, for individuals to assess danger and the risk of harm, and therefore, the individuals would most likely engage in potentially dangerous activities that may cause self-harm.

(All County Letter No. 15-25, Mach 19, 2015.)

Per MPP § 30-757.173, "Protective Supervision is only available under the following conditions as determined by social service staff:

> (a)     At the time of the initial assessment or reassessment, a need exists for
>         twenty four-hours-a-day of supervision in order for the recipient to remain at
>         home safely."

Protective Supervision requires a 24/7 need, so if the behavior in question is considered predictable, and the need for supervision is at certain times of the day, there is no Protective Supervision eligibility because there is not a 24 hour-a-day need.  Alternatively, unpredictable episodic behavior does meet the 24/7 requirement, as the need for supervision is constant.  The unpredictable episodic behavior must be frequent and long enough that constant supervision is necessary.

(All County Letter No. 15-25, Mach 19, 2015.)

Protective supervision services . . . are for monitoring the behavior of nonself-directing, confused, mentally impaired, or mentally ill persons . . . .  Such services consist of observing recipient behavior in order to safeguard the recipient against injury, hazard, or accident.  To be eligible for such services, an individual must show that twenty-four hour need exists . . . and that the recipient can live at home safely if protective supervision is provided.  Some recipients are old, suffering degenerative diseases. Others are young but retarded, epileptic, blind, brain damaged or schizophrenic.  The recipients cannot protect themselves from injury.  Some are self-destructive. For example, one autistic, blind and brain-damaged child lapses into seizures and temper tantrums . . . venting his frustrations by banging his head against a wall.  Others cannot control normal but potentially hazardous activities such as cooking or smoking a cigarette. (*Calderon v. Anderson* (1996) 45 Cal.App.4th 607, 614-615, citing *Miller v. Woods* (1983) 148 Cal.App.3d 862; *Marshall v. McMahon* (1993) 17 Cal.App.4th 1841.)

Such services consist 'of observing recipient behavior in order to safeguard the recipient against injury, hazard, or accident.'  To be eligible for such services, an individual must show 'that twenty-four hour need exists ... [¶]  In *Marshall v. McMahon*, the appellate court determined protective supervision services could properly be limited to IHSS beneficiaries who were for any reason non-self-directing, in that they are unaware of their physical or mental problems and unable to watch out for themselves.  [¶]... [Examples include] the mentally impaired who are inherently incapable of

understanding certain dangers, such as playing with matches, immersing electrical appliances in water, or wandering away from home. (*Calderon v. Anderson, supra,* 45 Cal.App.4th at pp. 614-615, citing *Miller v. Woods, supra,* 17 Cal.App.4th 1841.)

The Department described examples of "potentially dangerous conduct" as "playing with matches, immersing electrical appliances in water, or wandering away from home," "cooking or smoking a cigarette," and engaging in self-destructive behavior such as temper tantrums and head-banging against a wall.  These are examples of "active" participation in potentially dangerous activities. The purpose of protective supervision is to monitor active behavior in order to prevent harm from daily hazards. Accordingly, a proper interpretation of *Marshall* includes a finding that protective supervision is available for those IHSS beneficiaries who are non-self-directing, in that they are unaware of their physical or mental condition and, therefore, cannot protect themselves from injury, and who would most likely engage in potentially dangerous activities. (*Calderon v. Anderson, supra,* 45 Cal.App.4th at p. 616.)

In *Marshall v. McMahon* (1993) 17 Cal. App. 4th 1841, the Court of Appeals noted:  "The regulations provide for protective supervision for people who are 'non self-directing, confused, mentally impaired, or mentally ill.' . . . In other words . . . [t]he line is drawn between those who have the practical capacity to know when they are in trouble and those who do not."  As stated by the court, IHSS protective supervision is limited to "those disabled people who are so unaware of their being and conduct as to require nonmedical oversight, akin to baby-sitting[.]" (*Marshall v. McMahon* (1993) 17 Cal. App. 4th 1841, 1853.)

## CONCLUSION

It has been found and determined that the claimant has a need for 44:04 hours/minutes of IHSS effective July 16, 2015 as follows:

| Service: | Ranking | Weekly | Monthly | Total |
|---|---|---|---|---|
| Domestic Services: | | | 2:00 | |
| Meal preparation: | | 4:40 | | |
| Meal clean-up: | | 2:20 | | |
| Laundry: | | 1:00 | | |
| Food shopping: | | 0:15 | | |
| Other shopping: | | 0:10 | | |
| Dressing: | | 0:35 | | |
| Bathing, Oral Hygiene and Grooming: | | 0:35 | | |
| Care With Prosthesis: | | 0:07 | | |
| Medical Transportation: | | 0:01 | | |
| Total (weekly x 4.33): | | 42:04 | 2:00 | 44:04 |

*State of California*
*CDSS State Hearings Division*

It also has been found and determined that the claimant does not meet the protective supervision requirement of being non-self-directing, and the county's discontinuance of protective supervision therefore is sustained.

## ORDER

The claim is granted in part and denied in part.

The county shall rescind its action to set the claimant's IHSS at 22:30 hours/minutes per month, and shall authorize IHSS for the claimant at 44:04 hours/minutes per month effective July 16, 2015, as reflected above.

In all other respects, the claim is denied.

**Exhibit 3**

RECEIVED
Jan-06-2016 16:46   From-COPYLAND   5305644176   T-488   P.002/003   F-280
JAN 11 2016
STATE HEARINGS
1-8-16

California Department of Social
Services of Health Care.

Case no.
2 01523730

To whom this request
One party this letter meet
Concerning Dec. 24-2015 I have
tottally disagreed with the Judge
dececession, Bascielly due to all facts
dececession, Bascielly due to 4 proffessional which
was given by 4 proffessional doctor, 2 medical
included 2 socal Security in this case
doctor. What happen in this case
included predjudice, abuse, Racialism,
false allegation etc. which all in
the documents from hearing on
Dec. 24, 2015. I have filed a Racial,
and all other things that came along
with Defendant behavior. Plantiff was
granted alittle more hrs. then Defendant
taken away. You are not seeing the
Action which caused plantiff to loose HRS.
and why. I'm Ivy Anderson is requesting a
hearing where all matter be brought to light
the Defendant have ruin my life as well
as my framily. First Maggerated Judge agreed
to wrong doing But did not Replace full
hrs. If hrs are not replace it's only fAIR
to bring all state worker in DAYHAIL Swan
cAse BAck to Justice. Not only for hrs
But behavior of state worker, whom
sAid the hrs was taken from Ivy Anderson
from Defendant calling her hore and climient
as well saying we have to now sell our
Body for the hrs that was taken.

Jan-08-2016  15:30   From-COPYLAND                    5305644178         T-488  P.003/003  F-280

Embarrassment, Lost of credit, Rep, which used for my son health I the Plantiff never been so hurt and abuse, Now that life have no meaning until you fight for your own civil Rights, copies are in State as well as my own copy I the plantiff don't agreed to the abuse from another Employee and I don't think anyone should unless there is a problem with mental stress on Defendant Behalf. So with this Request in writing I am asking for a fair hearing as well as the abuse that my family suffer Daytrail Swan with High blood pressure, nerves. oc Please reviewed last documents on Recording and notify myself Plantiff (mother) as soon as possible. Defendant thought it was so funny But I am a fighter when it comes to Justice and all the plays that role should Just as well be. Defendant was found in the wrong far as hrs but my the plantiff real. hrs was not even close to a Job taking a company working together you can't win. After this decession Supena and Federal court will be brought to this matter. Again thanks for you cooperation and hope to here from Justice Soon.

Sincerely Joy Andson
in behalf
of
Daytrail Swan

**Exhibit 4**



STATE OF CALIFORNIA-HEALTH AND HUMAN SERVICES AGENCY
# DEPARTMENT OF SOCIAL SERVICES
744 P Street, MS 9-6-36, Sacramento, CA 958 14
www.cdss.ca.gov



CDSS

WILL LIGHTBOURNE
DIRECTOR

EDMUND G. BROWN JR.
GOVERNOR

March 30, 2016

Ivy Anderson
916 Chestnut Lane
Davis, CA 95616

SUBJECT:   REHEARING  REQUEST
CASE NAME: SWAN, DAYTRAIL; STATE HEARING 2015237304

After careful review of the case records including the decision in this matter and your
request for rehearing, it appears you disagree with findings of fact made by the
Administrative Law Judge in the decision.

The decision includes extensive factual findings based on the evidence presented by both
parties, and pertinent state regulations were correctly applied to those findings.

The claimant's rehearing request appears to allege that there was some prejudice against
the claimant based on race.  The claimant's authorized representative is advised that she
may file a civil rights complaint on the claimant's behalf by writing to the Department of
Social Services Civil Rights Bureau, 744 P Street, M.S. 8-16-70, Sacramento, CA 95814 or
calling (916) 654-2107.

In order to reverse findings of fact and grant a rehearing, it must be shown that the findings
were not supported by substantial evidence.  Since there is substantial evidence to support
the findings of fact with which you disagree, it has been determined that the findings were
proper.  Therefore, your rehearing request is denied effective March 29, 2016.

Your only remaining remedy is to seek judicial review in Superior Court, pursuant to
Welfare and Institutions Code Section §10962 and Code of Civil Procedures Section
§1094.5.  If you decide to seek judicial review, a petition must be filed in Superior Court
within one year after the date you received the original decision.  You may want to
consider contacting your nearest legal aid organization for advice and possible
assistance regarding this matter.  You may be entitled to reasonable attorney's fees and
cost, if the court renders a final decision in your favor.

Sincerely,

MANUEL A. ROMERO
Chief Administrative Law Judge
State Hearings Division

c:     Yolo County

**Exhibit 5**

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY                    CALIFORNIA DEPARTMENT OF SOCIAL SERVICES

## IN-HOME SUPPORTIVE SERVICES
## PROVIDER NOTIFICATION

Yolo County Department of Employment and Social Services
25 N Cottonwood ST
Woodland, CA 95695

| Provider Number: |
| 000032267 |
| Effective Date: |
| 07/16/2015 |

IVY ANDERSON
916 CHESTNUT LN
DAVIS CA 95616-2443

- You are receiving this information because you are a provider of IHSS for:
  DAYTRAIL SWAN
- Below are the monthly services authorized for the IHSS Recipient named above.  The hours you can claim on your timesheet will be reduced if you start or stop work in the middle of a month.
- These are the services that are authorized by the IHSS Program.  It is the responsibility of the Recipient to set a schedule within authorized monthly hours.
- If the Recipient has more than one provider, it is the responsibility of the Recipient to set a schedule for each provider so that the total hours worked by all providers does not exceed monthly authorized.
- If more than the authorized hours are worked, it will be the responsibility of the Recipient to provide payment for those hours.
- Contact your County IHSS Office if the Recipient is hospitalized. You cannot claim hours for periods when the Recipient is hospitalized or after the date-of-death.
- It is the responsibility of the Recipient to make payment of any share of cost deducted from the provider's paycheck.
- Social Security taxes and State Disability insurance will be deducted from your check automatically if you qualify. To have State and Federal withholding deducted you must fill out a W-4 and/or DE-4 and submit it to your County IHSS Office.
- If the recipient you are working for is your parent, spouse or minor child, you may not be eligible for withholding social security or medicare taxes.
- If you are injured while providing IHSS services contact your County IHSS Office immediately.

| Auth | Service Types |
|------|---------------|
| X | Domestic Services |
| X | Meal Preparation |
| X | Meal Clean-Up |
| X | Routine Laundry |
| X | Shopping for Food |
| X | Other Shopping and Errands |
|   | Respiration |
|   | Bowel and/or Bladder Care |
|   | Feeding |
|   | Routine Bed Baths |
| X | Dressing |
|   | Menstrual Care |
|   | Ambulation |

| Auth | Service Types |
|------|---------------|
|   | Transfer |
| X | Bathing, Oral Hygiene and Grooming |
|   | Rubbing Skin and Repositioning |
|   | Care and assistance w/prosthetics |
| X | Accompaniment to Medical Appointments |
|   | Accompaniment to Alternative Resources |
|   | Heavy Cleaning |
|   | Yard Hazard Abatement |
|   | Removal of Ice and Snow |
|   | Protective Supervision |
|   | Teaching and Demonstration |
|   | Paramedical Services |

**X = Authorized services you can be paid for**

Should you have any questions regarding the above information or are no longer a provider, please contact your County IHSS Office at 530-661-2955 .

SOC 858 (12/11)

# DESCRIPTION OF SERVICES

**DOMESTIC SERVICES:** General household chores to maintain the cleanliness of the home. MPP 30-757.11

**RELATED SERVICES:**
- Meal Preparation: Planning menus, preparing foods, cooking and serving meals. MPP 30-575.131
- Meal Clean-up: Cleaning up the cooking area and washing, drying, and putting away cookware, dishes, and utensils. MPP 30-757.132
- Routine Laundry: Washing, drying, folding, and putting away clothes and household linens. MPP 30-575.134
- Shopping for Food: Making a grocery list, travelling to/from the store, shopping, loading, unloading, and storing food purchased. MPP 30-757.135(b)
- Other Shopping/Errands: Includes, 1) Shopping for other necessary supplies, and 2) Performing small and necessary errands, e.g., picking up a prescription. MPP 30-757.135(c)

**NON-MEDICAL PERSONAL SERVICES:**
- Respiration Assistance: Assisting recipient with nonmedical breathing related services such as self-administration of oxygen and cleaning breathing machines. MPP 30-757.14(b)
- Bowel and/or Bladder Care: Assisting the recipient with using the toilet (including getting on/off), bedpan/bedside commode or urinal; emptying and cleaning ostomy, enema and/or catheter receptacles; applying diapers, disposable undergarments, and disposable barrier pads; wiping and cleaning recipient; and washing/drying recipient's hands. MPP 30-757.14(a)
- Feeding: Assisting the recipient to eat meals, including cleaning his/her face and hands before and after meals MPP 30-757.14(c)
- Routine Bed Bath: Giving a recipient who is confined to bed a routine sponge bath. MPP 30-757.14(d)
- Dressing: Assisting the recipient to put on and take off his/her clothes as necessary throughout the day MPP 30-757.14(f)
- Menstrual Care: Assistance with the external placement of sanitary napkins and barrier pads. MPP 30-757.14(j)
- Ambulation and Getting In/Out of Vehicles: Assisting the recipient with walking or moving about the home, including to/from the bathroom, and to/from and into/out of the car for transporting to medical appointments and/or alternative resources. MPP 30-757.14(k)
- Transfer (Moving In/Out of Bed and/or On/Off Seats): Assisting recipient from standing, sitting, or prone position to another position and/or from one piece of furniture or equipment to another. MPP 30-757.14(h)
- Bathing, Oral Hygiene, and/or Grooming: Assisting the recipient with: bathing or showering, brushing teeth, flossing, and cleaning dentures; shampooing, drying, and combing/brushing hair; shaving; and applying lotion, powder, deodorant. MPP 30-757.14(e)
- Rubbing Skin and Repositioning: Rubbing skin to promote circulation and/or prevent skin breakdown; turning in bed and other types of repositioning; and supervising range of motion exercises. MPP 30-757.14(g)
- Care of/Assistance with Prosthesis and Help Setting Up Medications: Taking off/putting on and maintaining and cleaning prosthetic devices, including vision/hearing aids; reminding the recipient to take prescribed and/or over-the-counter medications, and setting up Medi-sets. MPP 30-757.14(i)

**ACCOMPANIMENT SERVICES:** Accompanying the recipient during necessary travel to and from health-related appointments and/or alternative resource sites.

**HEAVY CLEANING:** Thorough cleaning of the home to remove hazardous debris and dirt. Authorized one time only and only under certain circumstances. MPP 30-757.12

**YARD HAZARD ABATEMENT:** Light work in the yard to: 1) Remove high grass or weeds, and rubbish when these materials pose a fire hazard (authorized one time only), or 2) Remove ice, snow, or other hazardous substances from entrances and essential walkways when these materials make access to the home hazardous. MPP 30757.16

**PROTECTIVE SUPERVISION:** Observing the behavior of a non-self-directing, confused, mentally impaired or mentally ill recipient and assisting as appropriate to guard recipient against injury, hazard, or accident. Certain limitations apply. MPP 30-757.17

**TEACHING AND DEMONSTRATION SERVICES:** Teaching and demonstrating services handled by the IHSS provider to help the recipient perform these on his or her own. Certain limitations apply. MPP 30-757-18

**PARAMEDICAL SERVICES:** Services meeting the following conditions: 1) Activities which recipients would normally perform themselves if they did not have functional limitations, 2) Activities which, due to the recipient's physical or mental condition, are necessary to maintain the recipient's health, and 3) Activities which include the administration of medications, puncturing the skin, or inserting a medical device into a body orifice, activities requiring sterile procedures, or requiring a judgment based on training given by a licensed health care professional. Special limitations apply. MPP 30-757.19

**FOR A MORE DETAILED DESCRIPTION OF SERVICES, YOU MAY VIEW THE MANUAL OF POLICY AND PROCEDURES (MPP) SECTIONS REFERENCED ABOVE ON THE CDSS WEBSITE AT http://www.dss.cahwnet.gov/ord/PG310.htm OR YOUR LOCAL IHSS COUNTY OFFICE.**

**Exhibit 6**

STATE OF CALIFORNIA - HEALTH AN HUMAN SERVICES AGENCY                    CALIFORNIA DEPARTMENT OF SOCIAL SERVICES

# IN-HOME SUPPORTIVE SERVICES
## Recipient/Employer Responsibility Checklist

I, __Daytrail Swan_____ , HAVE BEEN INFORMED BY MY SOCIAL WORKER THAT AS A RECIPIENT/EMPLOYER, I AM RESPONSIBLE FOR THE ACTIVITIES LISTED BELOW.

1) Provide required documentation to my Social Worker to determine continued eligibility and need for services. Information to report includes, but is not limited to, changes to my income, household composition, marital status, property ownership, phone number, and time I am away from my home.

2) Find, hire, train, supervise, and fire the provider I employ.

3) Comply with laws and regulations relating to wages/hours/working conditions and hiring of persons under age 18.

NOTE:  Refer to Industrial Welfare Commission (IWC) Order Number 15 regarding wages/hours/working conditions obtainable from the State Department of Industrial Relations, Division of Labor Standards and Enforcement listed in the telephone book. Additional information regarding the hiring of minors may be obtained by contacting your local school district.

4) Verify that my provider legally resides in the United States. My provider and I will complete Form I-9. I will retain the I-9 for at least three (3) years or one (1) year after employment ends, which ever is longer. I will protect the provider's confidential information, such as his/her social security number, address, and phone number.

5) Ensure standards of compensation, work scheduling and working conditions for my provider.

6) Inform my Social Worker of any future change in my provider(s), including:

    __ Name
    __ Address
    __ Telephone Number
    __ Relationship to me, if any
    __ Hours to be worked and services to be performed by each provider

7) Inform my provider that the gross hourly rate of pay is $___11.02_____ , and that Social Security and State Disability Insurance taxes are deducted from the provider's wages.

8) Inform my provider that he/she may request that Federal and/or State income taxes be deducted from his/her wages. Instruct the provider to submit Form W-4 (for federal income tax withholding) and/or Form DE 4 (for state income tax withholding).

9) Inform my provider that he/she is covered by Workers' Compensation, State Unemployment Insurance benefits, and State Disability Insurance benefits.

10) Inform my provider that he/she will receive an information sheet that will state my authorized services and the authorized time given to perform those services. Inform the provider that he/she is not paid to perform work when I am away from my home (for example, when in a hospital or away on vacation).

11) Pay my share of cost, if any.

12) Verify and sign my provider's timesheet for each pay period, showing the correct day(s) and the total number of hours worked. I understand I can be prosecuted under Federal and State laws for reporting false information or concealing information. I understand that when required, it will be necessary for me to place my fingerprint on my provider's timesheet to verify the correct day(s) and hours worked. This will be necessary, so my provider can be paid.

13) Ensure my provider signed his/her timesheet.

14) Advise my provider to mail his/her signed timesheet to the appropriate address at the end of each pay period.

_____
Recipient' Signature

__6 - 10 - 15__   _T A_
Date

Daytrail Swan
Printed Name

SOC 332 (9/09)                                                                                  Page 1 of 2

**Exhibit 7**

# TABLE OF CONTENTS

## CHAPTER 30-700  SERVICE PROGRAM NO. 7:  IN-HOME SUPPORTIVE SERVICES

|  | Section |
|---|---|
| Program Definition | 30-700 |
| Special Definitions | 30-701 |
| County Quality Assurance and Quality Improvement | 30-702 |
| Health Care Certification | 30-754 |
| Persons Served by the Non-PCSP IHSS Program | 30-755 |
| Need | 30-756 |
| Program Service Categories and Time Guidelines | 30-757 |
| Time Per Task and Frequency Guidelines | 30-758 |
| Application Process | 30-759 |
| Responsibilities | 30-760 |
| Needs Assessment Standards | 30-761 |
| Service Authorization | 30-763 |
| Individual Providers Compensation | 30-764 |
| Cost Limitations | 30-765 |
| County Plans | 30-766 |
| Service Delivery Methods | 30-767 |
| Overpayments/Underpayments | 30-768 |
| Payrolling for Individual Providers | 30-769 |
| Eligibility Standards | 30-770 |
| Linkage | 30-771 |
| Resources | 30-773 |
| Income | 30-775 |
| Provider Enrollment | 30-776 |

SOCIAL SERVICES STANDARDS
SERVICE PROGRAM NO. 7:  IN-HOME SUPPORTIVE SERVICES

## TABLE OF CONTENTS (Continued)

|  | Section |
|---|---|
| Provider Employment Eligibility Verification | 30-777 |
| Personal Care Services Program (PCSP) Eligibility | 30-780 |
| In-Home Supportive Services (IHSS) Plus Waiver Program | 30-785 |

| | | |
|---|---|---|
| | SOCIAL SERVICES STANDARDS | |
| Regulations | SERVICE PROGRAM NO. 7:  IN-HOME SUPPORT SERVICES | 30-701 (Cont.) |

**30-701**       **SPECIAL DEFINITIONS** (Continued)                                      **30-701**

(d)  (1)   Deeming means procedures by which the income and resources of certain relatives, living in the same household as the recipient, are determined to be available to the recipient for the purposes of establishing eligibility and share of cost.

(2)   Designated county department means the department designated by the county board of supervisors to administer the IHSS program.

(3)   Direct advance payment means a payment to be used for the purchase of authorized IHSS which is sent directly to the recipient in advance of the service actually being provided.

(e)  (1)   Employee means the provider of IHSS under the individual delivery method as defined in Section 30-767.13.

(2)   Employer means the recipient of IHSS when such services are purchased under the individual delivery method as defined in Section 30-767.13.

(3)   Equity Value means a resource's current market value after subtracting the value of any liens or encumbrances against the resources which are held by someone other than the recipient or his/her spouse.

(f)         (Reserved)

(g)         Gatekeeper Client means a person eligible for, but not placed in a skilled or intermediate care facility as a result of preadmission screening.

(h)  (1)   Hours Worked means the time during which the provider is subject to the control of the recipient, and includes all the time the provider is required or permitted to work, exclusive of time spent by the provider traveling to and from work.

(2)   Housemate means a person who shares a living unit with a recipient.  An able and available spouse or a live-in provider is not considered a housemate.

(i)  (1)   "Intercounty Transfer" means a transfer of responsibility for the provision of IHSS services from one county to another when the recipient moves to a new county and continues to be eligible for IHSS:

(A)   "Transferring County" means the county currently authorizing IHSS services.

(B)   "Receiving County" means the county to which the recipient moves to make his/her home.

**Exhibit 8**

# Yolo County

# In-Home Supportive Services

# *Provider Handbook*

YC 300.B (Rev. 2/07)

# *Introduction*

This handbook has been prepared by the Adult Services Division of the Yolo County Department of Employment and Social Services for the benefit of In-Home Care Providers.

The recipient of the IHSS program is the person who is eligible for the service, and is the employer of the provider.  The terms are interchangeable, but an attempt has been made to use the term recipient whenever possible.  The provider of the IHSS service is the person hired to perform the authorized tasks for the recipient, and may be referred to as the employee.

We hope that you find this handbook useful and informative.  If you have questions or need clarification, please do not hesitate to call the IHSS program at (916) 375-6239 or (530) 661-2750 ext. 6239, and speak with the Home Care Specialist.

Respectfully,

The In-Home Supportive Services Staff

## IHSS Program Overview

The IHSS program is a way for elderly, blind and disabled individuals, to safely live independently and prevent out-of-home placement. Working with elderly and disabled persons is challenging and rewarding. It can provide employment, career opportunities and the feeling that you are helping others.

The majority of IHSS Recipients are easy to get along with and appreciate your services; but many clients may be in considerable pain or may be distressed because they are unable to care for themselves. Some clients may, at times, seem irritable or may have medical conditions that create mental confusion. Patience and understanding will usually enable you to develop a trusting and cooperative relationship with the client. The IHSS Home Care Specialist is available to help answer questions and assist with problems. Please call the Home Care Specialist immediately if there are any problems. Don't let situations get out of hand unnecessarily.

## General Information for In-Home Care Providers

### Care Provider Registry

There is a Public Authority for IHSS in Yolo County, which maintains the names of available In-Home care providers in a Registry. These providers go through an application and screening process, and if accepted are place on the Registry. Their names may then be sent to Recipients who are seeking a provider. If you are interested in being on the Registry, please contact the Public Authority at (530) 661-2676.

### Role of the Social Worker

The Social Worker determines the Recipient's needs and hours of service. If you have any doubt about what hours or tasks are authorized, please review the IHSS Agreement which you and the Recipient signed. **This program does not pay for services performed when the Recipient is out of the home. Notify the Social Worker immediately if the Recipient is hospitalized or goes on vacation...**

### Employer/Employee Relationship

The IHSS Recipient is the employer. If you work for a number of different Recipients, then you have a number or different employers. If you are quitting a job, or taking time off, please tell your employer first, then call IHSS and speak with the Home Care Specialist. If Recipients need assistance finding a new provider, they can contact the Public Authority at (530) 661-2676 or 1-(800)-630-2224. If you are ill or unable to work and the Recipient requires meal preparation or daily personal care, notify the Recipient of your absence and call IHSS (916) 375-6239 or (530) 661-2750 ext. 6239. If you are going to be late arriving at the Recipient's home, call and let the Recipient know. If the Recipient expects you at an appointed time, but does not answer the door or telephone, call IHSS immediately or 911 if you are concerned for the Recipient's welfare.

## Share-of-Cost

Some IHSS Recipients have what is known as a **"share-of-cost"**. This means that they are obligated to pay a portion of your wage directly to you. When you are hired, you should ask the Recipient if they have a share-of-cost. If they do, you will still submit your regular hours worked for each pay period on your timesheet. The State Payroll System will then automatically deduct the Share-of-cost from your net wages. Your check stub will indicate how much the Recipient owes you. Taxes will be deducted based on your gross wages.

## On-The-Job-Injuries

In the event you have an accident on the job, first seek treatment for any injury and then call IHSS (916) 375-6239 or (530) 661-2750 ext. 6239, so we can file a Worker's Compensation report on behalf of the employer. Be sure to state that you are calling to report a work injury.

## Confidentiality

Information about IHSS Recipients is confidential. Information about any IHSS Recipient should never be discussed with anyone other than the IHSS staff. Discussing matters with friends, relatives or anyone else is strictly prohibited by law.

## Emergencies

If the Recipient you are working for becomes ill, or is injured while you are at work and needs immediate assistance, call 911. Stay calm and explain what the problem is to the operator. Make your client as comfortable as possible without moving him or her and wait for help to arrive. If you know who the Recipient wants notified in an emergency, call that person. Also, notify the Social Worker about the incident.

## Transportation

The IHSS program does not pay for transportation costs. IHSS authorizes time for accompaniment of the client to necessary medical appointments and alternative resources. If you use your own car for shopping, errands and/or medical transportation on behalf of a Recipient, the Recipient is responsible for paying you for operating expenses. The amount per mile should be agreed upon by you and the Recipient before you begin work. If you transport the Recipient in your car, you should carry automobile insurance.

## Home visits

Part of our job as IHSS Social Workers and Home Care Specialist is to make periodic visits to Recipient's homes to check on provider arrangements and to assess the Recipient's on-going needs and quality of service.

## Paydays

There are two pay periods per month, the 1st through the 15th; and the 16th through the last day of the month.   Payroll generates payment for timesheets turned in after the completion of work for these time periods.   You can expect to receive your paycheck 7-10 working days after the State receives your processed timesheet.

## W-4 and Tax Withholding

Generally speaking, it takes approximately 4 to 6 weeks for your W-4 to be entered in the State Payroll System.   This means that your first few paychecks may only show withholding for FICA (Social Security) and SDI (State Disability).   If you earn less than $100 (gross) per paycheck, however, your total combined wages could result in a tax liability at the end of the year.   As individual situations vary from provider to provider, the best source for W-4 and tax related information is the IRS.

The toll free number is 1-(800)-424-1040.

YC300 B (rev. 2/07)

4

## Authorized Services

The following tasks can be authorized by the Social Worker:

| | |
|---|---|
| **Domestic Services:**<br><br>~ Sweep, mop & vacuuming<br>~ Washing kitchen counters & sinks<br>~ Cleaning the bathroom<br>~ Storing food & supplies<br>~ Taking out the garbage<br>~ Dusting & picking-up<br>~ Cleaning the oven & stove<br>~ Clean & defrost the refrigerator<br>~ Bring in fuel for heat or cooking<br>~ Changing bed linens | |
| **Meal Preparation & Clean-up:**<br><br>~ Menu planning<br>~ Preparing, cooking & serving | |
| **Laundry:**<br><br>~ Washing & drying laundry<br>~ Folding & putting clothes away<br>~ Ironing & mending | |
| **Shopping & Errands:**<br><br>~ Food shopping and errands should be to the nearest available store or facility consistent with the client's budget and needs.  Due to time constrains (and insurance purposes), it is recommended that clients not accompany their provider. Using a list with the client's favorite brands is preferred. | |

### *Protective Supervision:*

~ This service is available for monitoring mentally confused clients who engage in behaviors that put them at risk. This does not include medical supervision, or supervision in anticipation of a medical emergency.



## Unauthorized Services

The following services are **_not_** covered by IHSS, and you **_must not_** ask your IHSS provider to do these unauthorized tasks. The following are examples of services that **_are not paid_** for by the IHSS program:

- General gardening or yard clean-up
- Washing, feeding, cleaning up after or exercising a pet
- Moving or lifting heavy furniture, boxes, etc.
- Washing windows
- Shampooing carpets
- Cooking or cleaning for family members unless they are also on IHSS.
- Paying bills
- Cleaning the house while you are in the hospital or away from your home for other reasons **(If you are out of your home, your monthly hours will be prorated).**

## *Your Rights and Responsibilities as an IHSS Provider*

### <u>Your Rights as an IHSS provider include</u>:

- To decide (with Recipient) the days of the week and the time of day you will be working.
- To Receive payment at the rate of $ _____ per hour for the IHSS authorized tasks.
- To have **Federal Income tax (FIT)** withheld from your check if you apply and meet certain conditions. If you want to know if you qualify, check IRS circular E or call the IRS toll free at 1-(800)-424-1040.
- To apply for **Worker's Compensation** if you are injured on the job. Applying does not guarantee you will receive Worker's Compensation. Call IHSS immediately or as soon as possible to report your injury at (916) 375-6239 or (530) 661-2750 ext. 6239.
- To receive **Social Security (FICA)** coverage if you make at least $50.00 per quarter and otherwise qualify. If you are a provider for your spouse or child or you are under 21 years old, you do not qualify for Social Security. Call Social Security office toll free at 1-(800)-772-1213 for further information.
- To receive **State Disability Insurance (SDI)**, if you qualify. Qualified providers have SDI payments deducted from their checks.
- To apply for **Unemployment Benefits**, if you become unemployed.
- To arrange time-off if you are living in the home and providing daily care for your employer. This is according to the California Labor Laws. Call 1-(415)-555-7878 for more information.
- To receive a W-2 form listing wages and deductions for the previous tax year.
- To be treated with dignity and respect.

### <u>Your responsibilities as an In-Home Care Provider include</u>:

- Keeping all information about the Recipient you work for confidential. Discussing information about the Recipient with anyone other than IHSS staff is prohibited by law.
- To notify the IHSS Home Care Specialist right away if you start working for a new client or stop working for a client.
- To immediately notify IHSS at (916) 375-6139 or (530) 661-2750 ext.6239 if you have a change in your mailing address, or make the change on the back of the timesheet. **IHSS paycheck cannot be forwarded.**

- To perform the care needed in a professional, efficient and responsible manner. Keep in mind that elderly and disabled persons sometimes require extra patience and understanding.

- Do not borrow or lend money or accept gifts from your employer. We suggest that you lock your purse in the trunk of your car before you go into your client's home to avoid any accusations of theft.

- To have your employer review and sign your timesheet after you have filled in the hours of the day that you have worked for the time period. Contact your Social Worker or payroll department if your employer is unable or unwilling to sign the timesheet. **Do not** sign your employer's name to the timesheet (with or without your employer's consent) as this is considered **fraud**.

- To clarify and make arrangements for reimbursement with your employer for tasks that he or she has asked you to do that are not covered by the IHSS program. Examples might be pet care, chopping wood, yard work, etc.

- **Do not bring family or friends to work with you.** The work you do for your employer is confidential.

- Please use household supplies sparingly; realize that your employer has a limited income and cannot afford expensive products.

- Notify the Social Worker immediately if the Recipient is out of the home in the hospital or on vacation. **You are not authorized to continue to work.** If you work during this time, IHSS will not pay for the hours that you work.

- Report your IHSS income if you are receiving CalWORKs, General Assistance or any other benefits for which you are required to report earnings.

- Please respect your employer's religious beliefs and household rules.

- Even though you are covered by Worker's Compensation, do not put yourself at risk by climbing ladders, lifting heavy objects, etc.

- Many clients are lonely and want to visit. Please visit while you do your work. Do not watch TV, use the employer's phone (except in case of an emergency) or eat your employer's food unless you are a member of your employer's household.

- Social Workers authorize only certain tasks and specific amounts of time to complete the tasks. Please only complete the tasks that the Social Worker has authorized. Some employers may ask you to do tasks that are not authorized. Explain to your employer that you may not do a task unless the Social Worker has authorized it. If you are injured while you are doing a task that has not been authorized, you may not be eligible for Worker's Compensation. If your client continues to ask you to do tasks that are not authorized, call your Social Worker and explain the problem.

YC300 B (rev. 2/07)

- Please notify the Social Worker about any changes in your employer's condition or any safety hazards inside or outside the home as soon as possible.

- If the Recipient becomes ill or is injured while you are at work, and needs immediate assistance, call 911. Stay calm and explain what the problem is to the operator. Make your client comfortable as possible without moving him or her, and wait for help to arrive. If you know who your employer wants notified in an emergency, call that person. Also, notify the Social Worker about the incident.

## *Reminders for IHSS Providers*

☑ *Your IHSS client is your employer,* **not the County of Yolo.**

☑ ***Fraud Prevention.*** *Never have your employer sign a blank or incomplete time- sheet!! When your employer signs the timesheet, this verifies that you have done the authorized tasks and worked the authorized hours. If your employer cannot or will not sign your time sheet, contact the payroll department or Social Worker.* **Do not bring or send in an unsigned time sheet.**

☑ ***Theft.*** *Do not put yourself in situation that could become legal issues. Never borrow money from your employer, do not accept gifts from your employer and never work in your employer's house when he/she is not home.*

☑ ***Injuries.*** *Notify IHSS as soon as possible if you are injured on the job. We would like you to notify us within twenty-four (24) hours unless you are hospitalized. If you wait too long to notify IHSS of your injury, Worker's Compensation might not be willing to cover your injury.*

☑ ***Sub-Contracting.*** *Do not sub-contract your work. Each person working for the employer must be enrolled through the Home Care Specialist. If you sub-contract work and the person is injured on the job, he/she will not be covered by Worker's Compensation.*

☑ *The IHSS Program does not provide health or insurance coverage. (The exception is Worker's Compensation to qualified individuals).The Public Authority offers health and dental benefits for some Registry providers who meet qualifying criteria.*

*IHSS does* **not** *pay for the following services: Routine yard work or gardening, pet care, cleaning up after visitors or for people living in the home who do not receive IHSS, lifting or moving heavy furniture or tasks that involve climbing on ladders or chairs. If you have any questions about specific tasks or hours, please call the IHSS Home Care Specialist for clarification.*

## *Infection Control*

Infection control consists of practices concerned with preventing the spread of organisms that cause disease.

Why is such caution needed?  You can get serious diseases such as hepatitis or AIDS (if your client has this disease), if you don't take safety precautions.  You can also give weakened clients diseases such as colds or the flu, which can make them very sick.

We strongly recommend that you follow these practices whenever you are providing care for a client:

### Hand Washing

Wash your hands with soap and warm water after using the toilet, handling uncooked foods, smoking, before preparing food and before and after client contact.

### Meal Preparation

Never prepare meals when you are sick or if you have infected cuts, burns or hang nails on your hands

### Gloves

Wear latex gloves whenever there is the potential for contact with blood or other body fluids.  This means wearing gloves while emptying the commode, cleaning the bathroom, handling dirty laundry or providing personal care.  Infectious waste is blood, urine, feces, or other body fluids that can carry disease.  **Always wear gloves** when handling these substances or anything soiled with them.  **Always wash your hands when you are finished.**

Linens or clothing soiled with blood or other body fluids should be soaked in bleach solution (one part bleach to ten parts of water).  Laundry should be washed in hot water. The same strength solution (1:10) can be used to clean floors, tubs, sinks, sponges, mops and other equipment.  Toilets can be cleaned with pure bleach.  The Department has a supply of gloves available for providers to use.  Contact IHSS or the Public Authority to obtain gloves.

## Precautions

Consider all clients as potentially infectious. Confidentiality laws restrict us from informing you when a client has an infectious disease and we may not be aware when a client may have such disease. However, you may discuss this with the client. Be aware that diseases other than AIDS pose much more of an immediate threat to you. Also, you are more likely to infect an elderly or disabled person than they are to pass a disease to you. Wear protective eyewear, a gown and mask if splatter with blood or a bodily fluid is possible or anticipated. Monitoring personal health is the responsibility of the individual employee. Another step you may take in your own personal infection control is to be tested for hepatitis, TB and HIV. It is recommended that you maintain a current vaccine status for yourself and your family. If you have any questions regarding these test or vaccines, you may call your private physician or contact the local Public Health Department.

## *Correct Lifting Techniques for a Healthy Back*

1. **Plan your lift.** Use your head as much as possible and your back as little as possible.
2. **Clean all obstructions.** So you don't trip.
3. **Have a solid footing and a good balance.** Toes pointed out, one foot along side of object if possible.
4. **Get the load as close to you as possible.** This reduces the pressure on your back.
5. **Grasp object correctly.** Firm grip, use entire hand, watch for edges, use gloves when necessary.
6. **Never lift more than you can handle.** Test load. Get help or use mechanical lifting devices when necessary.
7. **Bend your knees.** Don't keep your legs straight when bending at your waist!
8. **Straight back.** Tilt your pelvis so your back is kept relatively straight. Your back should be rounded when you lift.
9. **Tighten stomach muscles.** Don't hold your breathe however.
10. **Lift with arms and legs.** Move smoothly and don't jerk the load.
11. **Move your feet in the directions of the move.** If you twist your upper body, be sure to move at least one foot too.
12. **Use the same safe lifting practices when putting things down.**

## *Time Sheets and Payroll*

It is extremely important that the IHSS timesheets be completed accurately. Any errors or omissions on your time sheet may cause your paycheck to be delayed. If necessary, your time sheet may be returned to you for correction and/or completion.

Your time sheets need to be brought in to the Woodland or West Sacramento Social Services office, or mailed to the West Sacramento Office – the mailing address is provided on the time sheet. If you have questions that are not answered in these pages, please contact your Social Worker.

♦   IHSS services are paid on an arrears basis. This means that the provider is paid **after** the authorized hours have been worked.

♦   There are two pay periods per month: the 1st through the 15th, and the 16th through the end of the month. Timesheets should be submitted upon completion of work. Timesheets submitted claiming hours for days in advance may be returned.

♦   Be sure your time sheet is filled out completely – with slashes or X's in the days that you have not worked. The time sheet must be complete before it is signed by your employer. A recipient must not sign a blank timesheet.

**You must report your IHSS income if you are receiving CalWORKs, General Assistance or any other benefits for which you are required to report earnings.**

♦   You should receive your paycheck within seven (7) to ten (10) working days once your timesheet has been processed by the Payroll Department. Paychecks are sent from Sacramento directly to the provider.

♦   **Share of Cost.** Some of your employers have a share of cost for their IHSS service. When an IHSS client has a share of cost, this share of cost is deducted from your first paycheck of each month. This is because your employer is responsible for paying you this share of cost after you have worked the number of hours that equal the share of cost. Contact your Social Worker if you need more information.

♦   If you have an address change, write your new address on your time sheet and/or notify Payroll by phone. If you do not let us know your correct mailing address, your paycheck will be delayed. The post office **does not** forward IHSS paychecks.

♦   Your paycheck comes with a check stub and time sheet for the next pay period. Please be sure to send in the whole time sheet. If your name, address and account number at the top of the time sheet is cut off, your check could be delayed.

### *Completing a Time Sheet*

PLEASE BE SURE TO COMPLETE THE TIME SHEET IN INK

On the next page there is an example of a correctly completed time sheet. Please use this example as a guide and reference to avoid unnecessary delays in your paycheck.

Beginning at the very top right of the time sheet, it should have:

1.  *County of Yolo.*

2.  *Recipient Number.*

3.  *Provider Number (this is the last six digits of the provider's Social Security number.*

4.  *Name and mailing address for both recipient and provider.*

5.  *Month and year of time worked.*

6.  *Days worked will be the 1st through the 15th, or the 16th through the end of the month. Be sure to put slashes or X's through the days not worked.*

7.  *Daily hours worked should be written in decimals and rounded to the nearest 10th. (see attached conversion table at the back of the book)*

8.  *Total of hours worked for the time period (written in decimals), rounded to the nearest 10th.*

9.  *Employer's signature or authorized representative's signature. (Authorized representative is approved by the Department of Social Services.) If recipient cannot sign the time sheet, contact your Social Worker. Do not send in an unsigned timesheet unless authorized to do so by the Social Worker or the payroll department.*

10. *Date of the last day of service.*

11. *Provider's signature. This is signed by the person giving the service.*

12. *Date of the last day worked.*

13. *Mailing address for the Department of Social Services.*

# IN-HOME SUPPORTIVE SERVICES (IHSS)
## INDIVIDUAL PROVIDER INITIAL/REPLACEMENT TIME SHEET

**YOLO COUNTY DEPARTMENT**
**OF EMPLOYMENT AND SOCIAL SERVICES** ①
**500A JEFFERSON BLVD, SUITE 100**
**WEST SACRAMENTO, CA 95605**

Provider, Patricia
200 First Avenue
Nice Town, Ca 95400

1. The person you work for is an IHSS Recipient and shall be referred to as your employer in these instructions and on the timesheet.

2. You are referred to as a provider and are considered the employee of the Recipient.

3. This timesheet is only for one pay-period and includes those days you may have worked for an IHSS Recipient.

4. Your employer may have other providers working for him/her.

5. It is your employer's responsibility to tell you how many hours you may work during a pay period and what days you are to work.

6. If there is a share of cost liability or other liability shown on the attached timesheet, your employer is responsible for paying you that amount.

7. Be sure to enter the hours you worked each day and enter the total hours where indicated on the timesheet.

8. Be sure both you and the employer have signed and dated the timesheet.

9. After you have worked all of your hours for the pay-period, promptly return the attached timesheet to the county address printed on the timesheet.

10. Mail the timesheet in the return envelope that was included with the timesheet.

11. Your next timesheet will be attached to the paycheck you receive in the mail.

---

## IHSS TIME SHEET

**RECIPIENT NUMBER: 230012345-6** ①
Mouse, Micky
100 Main Street
Tune Town, CA 90001
ADDRESS CHANGE YES ☐   WRITE NEW ADDRESS ON REVERSE SIDE

**PROVIDER NUMBER: 654321** ②
Mouse, Minnie
200 First Avenue
Tune Town, CA 90001
ADDRESS CHANGE YES ☐   WRITE NEW ADDRESS ON REVERSE SIDE

④

**MARCH 2007** ③   EMPLOYER SERVICE HOURS ARE  11.0

⑤ ⑦

| DAY OF MONTH | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURS WORKED | X | X | 2 | X | X | X | X | 2 | X | X | X | X | X | X | 1.5 | | 5.5 |

FILL IN HOURS FOR EACH DAY WORKED AND PLACE TOTAL HERE
LLENE LAS HORAS PARA CADA DIA QUE TRABAJO Y APUNTE EL TOTAL AQUI

⑥ SHARE OF COST LIABILITY | OTHER LIABILITY $0.00 | OVERPAYMENT $0.00

57-00000001          Recipient Signature        Date

X

111112          ⑧          Provider Signature        Date

X

**SW NO.   BBB3** ⑨
**YOLO COUNTY**
**500 Jefferson Blvd, Suite 100**
**West Sacramento, CA  95605**

DO          01
SW          No. 555

After work has been completed sign, date and mail to this address:
Una vez que se haya completado el trabajo, firmese y enviese a esta direccion:
"Do not sign unless you have read and understand instructions on reverse side:
"No firme hasta que haya leido y entendido las instrucciones al dorso"

THIS IS TO CERTIFY THAT THE INFORMATION CONTAINED IN THIS FORM IS TRUE, ACCURATE AND COMPLETE, AND THAT THE PROVIDER AND RECIPIENT HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY AND COMPLY WITH THE STATEMENTS, AFFIRMATIONS AND CONDITIONS CONTAINED ON THE BACK OF THIS FORM.
POR MEDIO DE LA PRESENTE CERTIFICO QUE LA INFORMACION QUE CONTIENE ESTA FORMA ES VERDADERA, CORRECTA Y COMPLETA, Y QUE EL PROVEEDOR Y LA PERSONA QUE RECIBE LOS BENEFICIOS HAN LEIDO, ENTIENDEN Y ESTAN DE ACUERDO EN SOMETERSE A, Y CUMPLIR CON LAS DECLARACIONES, AFIRMACIONES Y CONDICIONES QUE CONTIENE EL DORSO DE ESTA FORMA.

YC300.B (rev. 2/07)

## CONVERSION OF MINUTES TO DECIMAL HOURS

| Decimal Hours | Minutes | Decimal Hours | Minutes |
|---|---|---|---|
| .00 | 0 | .52 | 31 |
| .02 | 1 | .53 | 32 |
| .03 | 2 | .55 | 33 |
| .05 | 3 | .57 | 34 |
| .07 | 4 | .58 | 35 |
| .08 | 5 | .60 | 36 |
| .10 | 6 | .62 | 37 |
| .12 | 7 | .63 | 38 |
| .13 | 8 | .65 | 39 |
| .15 | 9 | .67 | 40 |
| .17 | 10 | .68 | 41 |
| .18 | 11 | .70 | 42 |
| .20 | 12 | .72 | 43 |
| .22 | 13 | .73 | 44 |
| .23 | 14 | .75 | 45 |
| .25 | 15 | .77 | 46 |
| .27 | 16 | .78 | 47 |
| .28 | 17 | .80 | 48 |
| .30 | 18 | .82 | 49 |
| .32 | 19 | .83 | 50 |
| .33 | 20 | .85 | 51 |
| .35 | 21 | .87 | 52 |
| .37 | 22 | .88 | 53 |
| .38 | 23 | .90 | 54 |
| .40 | 24 | .92 | 55 |
| .42 | 25 | .93 | 56 |
| .43 | 26 | .95 | 57 |
| .45 | 27 | .97 | 58 |
| .47 | 28 | .98 | 59 |
| .48 | 29 | 1.00 | 60 |
| .50 | 30 | | |

**Example:  3 hours & 45 minutes = 3.75**

YC300.B (rev. 2/07)

**Exhibit 9**



WILL LIGHTBOURNE
DIRECTOR

STATE OF CALIFORNIA—HEALTH AND HUMAN SERVICES AGENCY
## DEPARTMENT OF SOCIAL SERVICES
744 P Street • Sacramento, CA 95814 • www.cdss.ca.gov



EDMUND G. BROWN JR.
GOVERNOR

March 19, 2015

ALL-COUNTY LETTER (ACL) NO.: 15-25

| REASON FOR THIS TRANSMITTAL |
| --- |
| [ ] State Law Change |
| [ ] Federal Law or Regulation Change |
| [ ] Court Order |
| [ ] Clarification Requested by One or More Counties |
| [X] Initiated by CDSS |

TO:      ALL COUNTY WELFARE DIRECTORS
         ALL IN-HOME SUPPORTIVE SERVICES (IHSS) PROGRAM MANAGERS

SUBJECT:   PROTECTIVE SUPERVISION CLARIFICATIONS

REFERENCES:   ACL 98-87 (October 30, 1998), ERRATA – ACL 98-87 (October 30, 1998)

This ACL provides clarifications regarding existing Protective Supervision policies.

**Protective Supervision Regulations**
Protective Supervision regulations are based on Welfare and Institutions Code (WIC) §12300(b). The Manual of Policies and Procedures (MPP) § 30-700 contains the following sections that are specifically applicable to the assessment, and authorization of Protective Supervision:

- MPP §§ 30-757.17 through .172
  .17 Protective Supervision consists of observing recipient behavior and intervening as appropriate in order to safeguard the recipient against injury, hazard, or accident.
    .171 Protective Supervision is available for observing the behavior of nonself-directing, confused, mentally impaired, or mentally ill persons only.
      (a) Protective Supervision may be provided through the following, or combination of the following arrangements.
        (1) In-Home Supportive Services program;
        (2) Alternative resources such as [1]adult or child day care centers, community resource centers, Senior Centers; respite centers;
        (3) Voluntary resources;
        (4) Repealed by Manual Letter No. SS-07-01

    .172 Protective Supervision shall not be authorized:

---

[1] Please note: Effective April 1, 2012, Adult Day Health Care (ADHC) is now referred to as Community-Based Adult Services (CBAS).

ACL No.: 15-25
Page Two

      (a) For friendly visiting or other social activities;
      (b) When the need is caused by a medical condition and the form of the
           supervision required is medical.
      (c) In anticipation of a medical emergency;
      (d) To prevent or control anti-social or aggressive recipient behavior.
      (e) To guard against deliberate self-destructive behavior, such as suicide, or
           when an individual knowingly intends to harm himself/herself.

- MPP §§ 30-757.173 and .174 pertain to the 24 hour-a-day need requirement and the Assessment of Need for Protective Supervision for In-Home Supportive Services Program, SOC 821, form.

- MPP § 30-756.37 Mental functioning shall be evaluated as follows:
      .371 The extent to which the recipient's cognitive and emotional impairment (if any) impacts his/her functioning in the 11 physical functions listed in Sections 30-756.2(a) through (k) is ranked in each of those functions. The level and type of human intervention needed shall be reflected in the rank for each function.
      .372 The recipient's mental function shall be evaluated on a three-point scale (Ranks 1, 2, and 5) in the functions of memory, orientation and judgment. This scale is used to determine the need for protective supervision.

- MPP § 30-763.33
.33 The need for protective supervision shall be assessed based on the recipient's individual need provided that:
      .331 When two (or more) IHSS recipients are living together and both require protective supervision, the need shall be treated as a common need and prorated accordingly. In the event that proration results in one recipient's assessed need exceeding the payment and hourly maximums provided in Section 30-765, the apportionment of need shall be adjusted between the recipients so that all, or as much as possible of the total common need for protective supervision may be met within the payment and hourly maximums.

      .332 For service authorization purposes, no need for protective supervision exists during periods when a provider is in the home to provide other services.

**Specific Policies**
To provide ongoing guidance to counties, the following information sets forth specific existing Protective Supervision policies based on CDSS interpretations of regulations and relevant court cases:

Mentally Impaired/Mentally Ill and Nonself-Directing
In addition to all other relevant eligibility criteria, a person must be both mentally impaired or mentally ill *and* nonself-directing to be eligible for Protective Supervision.  It

ACL No.: 15-25
Page Three

is not sufficient for someone to just be mentally impaired/mentally ill, there must also be evidence that he/she is nonself-directing. This policy is based on the court rulings in the *Marshall v. McMahon,* (1993) 17 Cal. App. 4th 1841, and *Calderon v. Anderson,* (1996) 45 Cal. App. 4th 607, cases, and will also be reflected in forthcoming amendments to the Protective Supervision regulations found at MPP § 30-757.17.

For the purpose of Protective Supervision eligibility, nonself-direction is an inability, due to a mental impairment/mental illness, for individuals to assess danger and the risk of harm, and therefore, the individuals would most likely engage in potentially dangerous activities that may cause self-harm.

Physical Ability to Engage in Potentially Dangerous Activities
Protective Supervision recipients must be physically capable of harming themselves. In *Calderon v. Anderson* (1996)*,* the court held that the plaintiff was not entitled to Protective Supervision under the IHSS Program because his physical condition made it impossible for him to engage in any activities that would require observation or preventative intervention, and Protective Supervision was not available merely to provide constant oversight in anticipation of environmental or medical emergencies.

However, a mentally impaired or mentally ill individual who is bedridden, or in a wheelchair, is not necessarily incapable of engaging in activities that would require observation or preventative intervention under Protective Supervision. The specific factual circumstances of the individual must be considered when determining whether s/he has the physical ability to engage in potentially dangerous activities.

For example:

- A mentally impaired/mentally ill bedridden individual may still have the physical ability to pull at his or her G-tube that requires observation or intervention under Protective Supervision.

This risk of harm is different than the types of medical emergencies/medical conditions for which Protective Supervision is not available under MPP § 30-757.172, such as the potential to fall because the mentally impaired/mentally ill person experiences poor balance.

Excluded Needs and Behaviors under MPP § 30-757.172
The exclusions listed under MPP § 30-757.172 are applicable if a recipient is otherwise eligible for Protective Supervision in that s/he has the requisite mental impairment/ mental illness, is nonself-directing, and would likely engage in potentially dangerous activities. MPP § 30-757.172 states Protective Supervision shall not be authorized:

    (a) For friendly visiting or other social activities;
    (b) When the need is caused by a medical condition and the form of the supervision required is medical.
    (c) In anticipation of a medical emergency;
    (d) To prevent or control anti-social or aggressive recipient behavior.

ACL No.: 15-25
Page Four

    (e) To guard against deliberate self-destructive behavior, such as suicide, or when
        an individual knowingly intends to harm himself/herself.

An example of an excluded need/behavior for "(b) When the need is caused by a
medical condition and the form of the supervision required is medical," is:

- A recipient who has diabetes and the need for Protective Supervision is to help
  if/when the recipient has an episode of hypoglycemia.

Additionally, an example of an excluded need/behavior for "(c) In anticipation of a
medical emergency" is:

- A recipient who has Congestive Heart Failure and the need for Protective
  Supervision is in anticipation of a heart attack.

If a recipient only displays needs or behaviors excluded under MPP § 30-757.172, they
are not eligible for Protective Supervision.  If a recipient displays self-injurious behavior
that would qualify for Protective Supervision, but also displays excluded behavior(s)
based on MPP § 30-757.172, they may still be eligible for Protective Supervision for the
non-excluded behaviors.

For example:

- A recipient who displays multiple self-injurious behaviors such as attempting
  suicide and wandering would be eligible for Protective Supervision to intervene to
  prevent wandering, but not to prevent suicide attempts.

The IHSS program is not intended to prevent or control dangerous behaviors, and IHSS
providers are not trained to intervene when recipients are displaying such behaviors.
*The non-IHSS program remedy for suicide attempts and other dangerous behavior is
still to call 911.*

Additional Excluded Needs and Behaviors
The *Calderon v. Anderson* decision states that "protective supervision is not available
merely to provide constant oversight in anticipation of environmental or medical
emergency or exigent circumstances."

For example:

- A mentally ill/mentally impaired recipient who would not know how to exit his/her
  home in the event of a fire is not eligible for Protective Supervision based on that
  behavior (or lack of appropriate response/behavior) alone.

Routine Child Care
Protective Supervision cannot be authorized for routine child care or supervision.  This
policy is based on the requirement that Protective Supervision must be related to the
functional limitations of the child as set forth in WIC § 12300(e)(4).  This policy is also

ACL No.: 15-25
Page Five

supported by MPP § 30-763.456(d), and it is CDSS' interpretation that this criteria
applies to all providers, not just parent providers.

Environmental Modifications/Safety-Proofing to Eliminate Need for Protective
Supervision
Environmental modifications such as removing knobs from stove or adding safety
latches can be used, and should be encouraged, to eliminate the need for Protective
Supervision. If the modification eliminates the hazard, then there is no longer a need for
Protective Supervision and Protective Supervision should not be authorized.

Fluctuating/Episodic Behavior
Per MPP § 30-757.173, "Protective Supervision is only available under the following
conditions as determined by social service staff:

> (a) At the time of the initial assessment or reassessment, a need exists for twenty
> four-hours-a-day of supervision in order for the recipient to remain at home
> safely."

Protective Supervision requires a 24/7 need, so if the behavior in question is considered
predictable, and the need for supervision is at certain times of the day, there is no
Protective Supervision eligibility because there is not a 24 hour-a-day need.
Alternatively, unpredictable episodic behavior does meet the 24/7 requirement, as the
need for supervision is constant. The unpredictable episodic behavior must be frequent
and long enough that constant supervision is necessary.

It is CDSS' policy that leaving a recipient alone for some fixed short period of time, is
not, by itself, a reason to deny Protective Supervision. Although this concept is derived
from language from the *Garrett* court order, discussed below, it is CDSS' policy that this
should apply to adults and minors alike; therefore, an adult or a child may be eligible for
Protective Supervision in order to safeguard them from dangerous and
fluctuating/episodic behavior, even if that behavior allows the person to be left alone for
short periods of time.

Actual Injury vs. Propensity to Harm Self
It is CDSS' policy that a person does not have to suffer *actual* injury to be eligible for
Protective Supervision, but only have a history of a propensity for placing him/herself in
danger.

For example:
- A person with a documented history of nonself-direction, who has a tendency to
  open the front door and start walking away, does not necessarily have to make it
  into the street in order for this to be considered potentially hazardous behavior.

Other evidence of a propensity for placing him/herself in danger may come from doctor
evaluations, Individualized Education Plans (IEPs), etc.

When reassessing for Protective Supervision, changes in a recipient's physical mobility

ACL No.: 15-25
Page Six

may impact their eligibility for Protective Supervision. Also, changes in a recipient's behavior or condition which indicates that s/he no longer has the same propensity to engage in potentially dangerous activities may impact their eligibility for Protective Supervision.

When the county discontinues Protective Supervision, it must establish the factual basis for the discontinuance.

## Assessing Children for Protective Supervision

Based on the settlements of the *Garrett v. Anderson* and the *Lam v. Anderson* superior court cases, county social workers must always:

1. assess all IHSS eligible minors for a mental impairment/mental illness, and request the parent or guardian obtain available information and documentation about the existence of a minor's mental impairment/mental illness;
2. evaluate a mentally ill/mentally impaired minor in the functions of memory, orientation, and judgment, on an individualized basis;
3. evaluate a mentally ill/mentally impaired minor even if there are no previous injuries;
4. evaluate a mentally ill/mentally impaired minor regardless of age;
5. assess whether the minor needs more supervision because of his/her mental impairment than a minor of the same age without such an impairment;
6. evaluate a mentally ill/mentally impaired minor even if the minor can be left home alone for a fixed period of time;
7. review any relevant information provided by the parent;
8. advise parents or guardians of the availability of, and the conditions for receiving Protective Supervision; and
9. not presume that services, which are otherwise compensable, will be provided voluntarily by a parent or guardian or anyone else.

As stated above, the counties must assess all eligible minors, which include anyone up to the age of 18 years old, for a mental impairment/ mental illness. If the child is mentally impaired/mentally ill, the following provides a four-step process for counties to use when applying the terms of the *Garrett v. Anderson* stipulated judgment:

1. Is the minor nonself-directing due to the mental impairment/mental illness? If the answer is no, then the minor is not eligible for Protective Supervision pursuant to *Calderon v. Anderson* and *Marshal v. McMahon*, and Protective Supervision should not be granted. The county should document that because the child is self-directing, the minor does not meet the Garrett criteria of needing more supervision than another minor of the same age without a mental impairment/ mental illness. Counties should also document the underlying facts which are basis for this determination. If the answer is yes, then move to question 2;

2. If the minor is mentally impaired/mentally ill and nonself-directing, is he/she likely to engage in potentially dangerous activities? Consider here whether the minor retains the physical ability to put him/herself at risk of harm. If the answer is no,

ACL No.: 15-25
Page Seven

then the minor is not eligible for Protective Supervision under the *Calderon v. Anderson* court decision, and Protective Supervision should not be granted. The county should document that because the child is not likely to engage in potentially dangerous activities, the minor does not meet the Garrett criteria of needing more supervision than another minor of the same age without a mental impairment/mental illness. If the answer is yes, then move to question 3;

3. Does he/she also need more supervision than a minor of comparable age who is not mentally impaired/mentally ill pursuant to the *Garrett v. Anderson* court order? "More supervision" can be more time, more intensity, or both. The additional supervision required must be significantly more than routine child care, and not only be related to the functional limitations of the child, but also allow the child to remain safely in their own home with this assistance. If the answer is no, then the minor is not eligible for Protective Supervision under the *Garrett v. Anderson* court order, and Protective Supervision should not be granted. The county should document that because the child does not need more supervision than another child of the same age without a mental impairment/mental illness, the minor does not meet the Garrett criteria of needing 24 hours-a-day of supervision. If the answer is yes, then move to question 4;

4. When it is found that "more supervision" is needed, is 24 hour-a-day supervision needed in order for the minor to remain at home safely pursuant to MPP § 30-757.173? If the answer is no, then the minor is not eligible for Protective Supervision and it should not be granted. If the answer is yes, the minor qualifies for Protective Supervision, if otherwise eligible.

   o Remember that a 24-hour care plan is needed to enumerate how the recipient will be protectively supervised for any hours above those that are provided by IHSS or Alternative Resources.

It is recommended that counties document in the case involving a person up to the age of 18 years old that these *Garrett v. Anderson* requirements have been met in all appropriate cases. The above 4-step process can be used as a template in the case narrative.

**Next Steps**
To ensure the Protective Supervision regulations accurately reflect CDSS policy and relevant court cases, CDSS is currently working on updating the Protective Supervision regulations.

If you have any questions regarding this ACL, please call the Policy and Quality Assurance Branch, Policy and Operations Bureau at (916) 651-5350, or send an email to APDPolicy@dss.ca.gov.

ACL No.: 15-25
Page Eight

Sincerely,

***Original Document Signed By:***

EILEEN CARROLL
Deputy Director
Adult Programs Division


c: CWDA

**Exhibit 10**

## IN-HOME SUPPORTIVE SERVICES PROGRAM
## STATEMENT OF RECEIPT AND UNDERSTANDING

### Recipient Statement

I, _Daytrail Simon_, a Recipient of In-Home Supportive Services understand that I have certain rights and responsibilities that pertain to my participation in this program. My signature below indicates that I have received, read and agree to abide by the rules and regulations as stated in the **Yolo County In-Home Supportive Services Handbook** provided to me by Yolo County In-Home Supportive Services (IHSS) Program that outlines my rights and responsibilities for participation in the IHSS Program. I have discussed any concerns or questions I have regarding my rights and responsibilities with IHSS staff and I understand that I can contact my IHSS Social Worker or other Yolo County IHSS representative should I have any future questions or concerns regarding my rights and responsibilities for participation in the IHSS program.

_____          11-16-09
Recipient Signature                              Date

### Provider Statement

I, _Ivy Anderson_, a Provider of In-Home Supportive Services understand that I have certain rights and responsibilities that pertain to my employment as an IHSS Provider. My signature below indicates that I have received, read and agree to abide by the rules and regulations as stated in the **Yolo County In-Home Supportive Services Handbook** provided to me by the Yolo County In-Home supportive Services (IHSS) Program. I understand that I can contact the IHSS Home Care Specialist or other Yolo County IHSS representative should I have any questions or concerns regarding my rights and responsibilities as an IHSS Provider. I also acknowledge receipt of a copy of the Recipient Provider agreement (form 206.3).

_____          11-16-09
Provider Signature                              Date

YC300-A (1/06)

White – County          Pink – Recipient          Yellow - Provider