UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| IVY ANDERSON,<br><br>            Plaintiff,<br><br>     v.<br><br>YOLO COUNTY,<br><br>            Defendant. | CIV. NO. 2:16-cv-2466 WBS DB<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u> |

----oo0oo----

Plaintiff Ivy Anderson filed this action against defendant Yolo County, alleging that defendant racially discriminated against her when it reduced the in-home supportive service ("IHSS") funds of her developmentally delayed son, Daytrail Swan.  (Notice of Removal Ex. A, First Am. Compl. ("FAC") (Docket No. 1).)  Before the court now is defendant's Motion to dismiss plaintiff's amended Complaint.  (Def.'s Mot. (Docket No. 4).)

I.   <u>Factual and Procedural Background</u>

The state of California provides IHSS funds to low-

1

income elderly and disabled persons to assist with their daily living needs. V.L. v. Wagner, 669 F. Supp. 2d 1106, 1109 (N.D. Cal. 2009). The IHSS program is administered by counties under the supervision of the California Department of Social Services ("DSS"). Basden v. Wagner, 181 Cal. App. 4th 929, 934 (3d Dist. 2010). When a county authorizes the provision of IHSS funds to a recipient, it "either obtains and pays [an IHSS] provider or pays the recipient who hires one." Miller v. Woods, 148 Cal. App. 3d 862, 868 (1983). In many cases, the recipient uses his or her IHSS funds to pay a relative, who provides IHSS to the recipient. Putz v. Schwarzenegger, No. 10-00344 CW, 2010 WL 1838717, at *1 (N.D. Cal. May 5, 2010).

Plaintiff is the IHSS provider for her 37-year-old son, Swan, who has been diagnosed with developmental delay. (FAC ¶ 7.) Defendant administers Swan's IHSS funds. (See id. at 1-2.) Until June 10, 2015, defendant had been issuing nearly 250 hours' worth of IHSS funds to Swan each month, which plaintiff had been keeping as income.[1] (See id. ¶ 8-9.)

On June 10, 2015, defendant sent a social worker to plaintiff's home to conduct an assessment of Swan's IHSS needs. (Id. ¶ 9.) Plaintiff alleges that at the assessment, the social worker "was demeaning, unprofessional, and continuously wrote down statements that were never spoken by either Plaintiff or her son." (Id. ¶ 27.) Three weeks after the assessment, defendant notified plaintiff that it would be reducing Swan's IHSS funds to

---

[1] Plaintiff deals directly with defendant and signs IHSS documents on her son's behalf. (See FAC ¶ 21; Decl. of Sean O'Dowd Ex. 6, IHSS Recipient/Employer Responsibility Checklist (signed by plaintiff on Swan's behalf) (Docket No. 4-3).)

22.5 hours per month. (Id. ¶ 10.)

Plaintiff challenged the reduction via the DSS' administrative appeals process. (Id. ¶ 12.) After a hearing on the matter, the DSS affirmed defendant's reduction in large part, ordering that Swan's IHSS funds be reduced to 44 hours and 4 minutes per month. (Id. ¶ 13.) Plaintiff sought a rehearing on DSS' decision, which DSS declined to grant. (Id. ¶ 15.)

On July 20, 2016, plaintiff filed this action in the California Superior Court. (Notice of Removal at 1.) She amended her complaint on September 12, 2016. (See FAC at 7.) Plaintiff does not name her son as a plaintiff in the amended Complaint, nor does she bring any claims on his behalf. Instead, plaintiff, who is African-American, (see id. ¶ 45), alleges that defendant racially discriminated against her by reducing her son's IHSS funds, thus in effect reducing her income. (See id. ¶ 25 ("Plaintiff believes and thereon alleges that her race was a factor in Defendants' [decision to cut her son's IHSS funds] . . . .").) She brings the following claims against defendant: (1) race discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal Gov. Code §§ 12940 et seq.; (2) "Negligent Failure to Prevent Retaliation"; and (3) race discrimination in violation of 42 U.S.C. § 1981 ("section 1981"). (Id. at 3-7.)

Defendant removed plaintiff's action to this court on October 17, 2016. (Notice of Removal.) Defendant now moves to dismiss plaintiff's amended Complaint pursuant to Federal Rule of

3

Civil Procedure 12(b)(6).[2]  (Def.'s Mot.)

II. Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The "plausibility" standard, "asks for more than a sheer possibility that a defendant has acted unlawfully," and

---

[2]  Defendant also moves for dismissal under Rule 12(b)(1), arguing that plaintiff does not have Article III standing because "she has no entitlement to welfare benefits that belong to [her son]."  (See Def.'s Mot., Mem. at 7 (Docket 4-1).)

District courts in this circuit have held, however, that the indirect "economic harm" IHSS providers suffer as the result of government reductions of their clients' IHSS hours is sufficient to confer standing.  Oster v. Lightbourne, No. C 09-4668 CW, 2012 WL 691833, at *10 (N.D. Cal. Mar. 2, 2012); see also Martinez v. Schwarzenegger, No. C 09-02306 CW, 2009 WL 3353227, at *3 (N.D. Cal. Oct. 15, 2009) (finding that IHSS providers have standing to challenge state reduction of IHSS funds).  The Ninth Circuit appears to have ratified that holding sub silentio.  See Dominguez v. Schwarzenegger, 596 F.3d 1087, 1098 (9th Cir. 2010) (affirming district court decision in which district court found that IHSS providers have standing to challenge state reduction of IHSS funds), vacated on other grounds in Douglas v. Indep. Living Ctr. of S. California, Inc., 132 S. Ct. 1204 (2012).  Moreover, Plaintiff alleges that defendant's reduction of IHSS funds caused her "emotional distress," which, in itself, "can confer [Article III] standing."  Leung v. XPO Logistics, Inc., 164 F. Supp. 3d 1032, 1039 (N.D. Ill. 2015).

The court need not decide the standing issue in light of other deficiencies in plaintiff's amended Complaint.

where a plaintiff pleads facts that are "merely consistent with a defendant's liability," the facts "stop[] short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

III. Discussion

Of the three causes of action alleged by plaintiff in her amended Complaint, only her section 1981 claim arises under federal law.[3] Plaintiff is a resident of California, and defendant is a municipality located in California, (FAC ¶¶ 1-2), thus there is no diversity jurisdiction in this case. The only jurisdictional basis for plaintiff's state law claims, therefore, is supplemental jurisdiction under 28 U.S.C. § 1367(c) ("section 1367(c)").

Plaintiff's section 1981 claim, like her other claims, alleges that defendant racially discriminated against her by

---

[3] Plaintiff's second cause of action for "negligent failure to prevent retaliation" cites no statute. Thus, the court construes that claim to be a negligence claim brought under California common law.

5

1  reducing her son's IHSS funds.  (See FAC ¶ 28.)  In support of
2  her claim that defendant cut her son's IHSS funds because of her
3  race, plaintiff alleges that the social worker who conducted her
4  son's assessment spoke to her in a "demeaning" and
5  "unprofessional" tone, "repeatedly cut[ her ]off from speaking,"
6  and "falsified . . . statements" that defendant later used to
7  justify her son's IHSS reduction.  (Id. ¶¶ 27, 46.)
8        Section 1981 states, in relevant part: "All persons
9  within the jurisdiction of the United States shall have the same
10 right . . . to make and enforce contracts, to sue, be parties,
11 give evidence, and to the full and equal benefit of all laws and
12 proceedings for the security of persons and property as is
13 enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  The
14 United States Supreme Court explained in Domino's Pizza, Inc. v.
15 McDonald, 546 U.S. 470 (2006) that "[a]mong the many statutes
16 that combat racial discrimination, § 1981 . . . has a specific
17 function: It protects the equal right of '[a]ll persons within
18 the jurisdiction of the United States' to 'make and enforce
19 contracts' without respect to race."  Id. at 474.  "Any claim
20 brought under § 1981, therefore, must initially identify an
21 impaired contractual relationship under which the plaintiff has
22 rights."  Id. at 476 (internal citation omitted).
23       The Ninth Circuit has held that "a prima facie section
24 1981 case, like a prima facie disparate treatment case under
25 Title VII, requires proof of intentional discrimination."  Gay v.
26 Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531,
27 538 (9th Cir. 1982).  Thus, a section 1981 plaintiff, like a
28 Title VII plaintiff, must allege facts that plausibly indicate

6

defendant was "motivated by a discriminatory animus."  Id.

Although it is questionable whether plaintiff's IHSS arrangement with defendant constituted a "contractual relationship under which [she] has rights," even assuming that such a relationship existed, plaintiff has not alleged facts that plausibly indicate defendant's conduct was motivated by "a discriminatory animus."

Plaintiff's allegations that defendant's social worker spoke to her in a "demeaning" tone and falsified statements, while perhaps indicative of condescension and hostility, are not sufficient, in themselves, to plausibly suggest that defendant had a racially discriminatory motive.  See Berry v. Chevron USA, Inc., 84 F. App'x 863, 865 (9th Cir. 2003) (allegations that employer made "condescending statements" towards plaintiff are insufficient to support an "inference of [racial] discrimination"); Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 568, 592-93 (S.D.N.Y. 2013) (declining to find discriminatory motive despite evidence of employer's "hostile attitude" towards plaintiff) ; Soria v. Univision Radio Los Angeles, Inc., 210 Cal. Rptr. 3d 59, 79 (2d Dist. 2016) ("[S]howing the employer was lying [about the reason for employee's discharge] . . . is not enough to infer discriminatory animus.").[4]

---

[4] The court may consider Title VII cases, such as Berry, Postash, and Mancell, in deciding claims brought under section 1981.  See Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007) ("In analyzing . . . claims under § 1981, we apply the same legal principles as those applicable in a Title VII disparate treatment case.").  FEHA cases, such as Soria, are also instructive.  See Peralta v. City & Cty. of San Francisco, 427 F. App'x 616 (9th

It is entirely possible, for example, that the social worker was condescending and hostile towards plaintiff because she is poor, or because he had a personal dislike for her. "[M]ere dislike of an employee does not support a determination of pretext or discriminatory intent." Mancell v. McHugh, 111 F. Supp. 3d 1190, 1201 (D.N.M. 2015). It is also just as possible that the social worker was condescending and hostile toward everyone without regard to their race or any other personal characteristics.

Additionally, defendant appears to have conducted a thorough review of Swan's mental condition before reducing his IHSS funds. (See Decl. of Sean O'Dowd Ex. 1, Notice of Action (providing table breakdown of Swan's IHSS funds with explanations as to why hours were being reduced) (Docket No. 4-3); id. Ex. 2, ALJ Decision at 3-5 (recounting numerous tests performed by social worker at Swan's in-home assessment).[5]) The ALJ who heard plaintiff's appeal affirmed defendant's decision in large part, agreeing with defendant on its key finding that Swan no longer needed protective supervision, (ALJ Decision at 15), which had

---

Cir. 2011) (analyzing FEHA and section 1981 claims together).

[5] As plaintiff's Notice of Action and the ALJ's decision are both matters of administrative record and incorporated by reference in plaintiff's amended Complaint, the court hereby takes judicial notice of them pursuant to Federal Rule of Evidence 201. See Smith v. Los Angeles Unified Sch. Dist., 830 F.3d 843, 851 n.10 (9th Cir. 2016) (noting that "courts routinely take judicial notice of . . . records and reports of administrative bodies"); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[T]he incorporation by reference doctrine . . . permits [courts] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions.").

8

accounted for 180 of the nearly 250 IHSS hours he had been receiving prior to the assessment, (see Notice of Action at 1). The thoroughness of defendant's in-home assessment and the ALJ's confirmation of its key finding suggest that the assessment, not racism, was the basis for defendant's reduction of Swan's IHSS hours.

In light of defendant's assessment and plaintiff's inability to allege facts that plausibly suggest a racially discriminatory motive, the court finds that plaintiff has failed to state a plausible claim under section 1981.  See Gay, 694 F.2d at 538.  Accordingly, the court will dismiss plaintiff's section 1981 claim.

**A district court "may decline to exercise supplemental jurisdiction . . . [if** it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc) (explaining that a district court may decide sua sponte to decline to exercise supplemental jurisdiction).  In deciding whether to exercise supplemental jurisdiction over plaintiff's state claims, the court must consider the principles of "judicial economy, convenience, fairness, and comity."  Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  "[I]n the usual case in which all federal-law claims are [dismissed] before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id.

Because plaintiff has failed to state a plausible claim under federal law, and because the gravamen of her amended

9

Complaint is that defendant unlawfully administered a state benefits program, the court will decline to exercise supplemental jurisdiction over her state law claims.

IT IS THEREFORE ORDERED that defendant's Motion to dismiss plaintiff's first amended Complaint be, and the same hereby is, GRANTED.  Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

Plaintiff has twenty days from the date this Order is signed to file a second amended complaint, if she can do so consistent with this Order.

Dated:   February 14, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE